J-A04011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DONALD S. LUCAS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JENNIFER R. DAUM, | |
| Appellant | No. 598 WDA 2014 |

Appeal from the Order March 20, 2014
In the Court of Common Pleas of Fayette County
Civil Division at No(s): 1913 OF 2011, G.D.

BEFORE:  BOWES, OLSON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 15, 2015**

Jennifer R. Daum ("Wife") appeals from the March 20, 2014 equitable distribution order.  After thorough review, we reverse and remand with instructions.

Wife and Donald S. Lucas ("Husband") married on June 19, 1993, separated on April 11, 2011, and were divorced on June 3, 2014.  It was the first marriage for both parties.  Husband and Wife share physical custody of two minor children who were born of the marriage.

At the time of the divorce litigation, Husband was a Pennsylvania State Trooper assigned to the Bureau of Investigation, Computer Crime Unit with nineteen years of service.  He also performed services as a forensics

---

[*]  Retired Senior Judge assigned to the Superior Court.

specialist with the Public Agency Training Council ("PATC") and his duties involved the training of individuals in computer forensics all over the United States. In addition to his $85,000 per year salary from the Pennsylvania State Police, Husband earned an additional $8,000 to $18,000 per year at this secondary employment.

Wife is a teacher with approximately fourteen years' experience, twelve and one-half years of which counts toward her twenty-five year eligibility for the Public School Employees Retirement System. For nine years, she has been employed as a secondary level history teacher in the Charleroi School District. At the time of the hearing, Wife was earning $45,718 per year. She explained that this included a $400 per month credit she received for opting out of the School District's health insurance coverage. Since she would no longer be covered under Husband's plan as of the date of the divorce, she would lose that credit and incur a monthly deduction from her paycheck for coverage through her employer. Wife testified that, pursuant to the teachers' contract, she would be entitled to a substantial bump in salary in August 2018 that would increase her earnings to $70,000 per year.

The parties purchased two homes during the marriage. Their first home was located on Franklin Street in Uniontown. After they purchased their second home on Smock Street in 2003, they rented out the Franklin Street house. Following separation, the Franklin Street property was sold at

short sale. The marital home on Smock was sold after the master's hearing and yielded net proceeds of $54,572.97. It was undisputed that Wife contributed $47,500 from an $80,000 inheritance as the down payment for the purchase of that home.

A hearing was held before Master John Zeglen on July 29 and 30, 2013. He issued his report and recommendations on November 20, 2013. The master recommended that the trial court grant a divorce under Section 3301(c) of the Divorce Code; that Wife receive alimony of $435 per month until August 2018; that the parties pay their own fees and costs not otherwise addressed, including their respective shares of the Special Master's fee; that the parties retain ownership of any current life insurance; and that the proceeds of the marital home be distributed $30,000 to Wife and $24,572.97 to Husband. The master also awarded the parties specific marital assets and assigned responsibility for the marital debts.

Exceptions were filed by both parties, together with briefs, and oral argument was held on March 13, 2013. While exceptions were pending, Wife sought injunctive relief from the trial court. She represented that Husband submitted a letter of resignation dated March 5, 2014, to the Pennsylvania State Police. Based upon her belief that Husband could elect to receive a substantial lump sum distribution from his pension and fearing that the pension proceeds would be dissipated, Wife asked the trial court to enjoin disbursement of the pension to Husband until the exceptions had

been finally decided. On March 17, 2014, the trial court entered an order that neither party could sell, alienate, or transfer any asset of the marital estate until further order of court. On March 20, 2014, the trial court overruled all exceptions and adopted the master's recommendation. Wife timely appealed and she presents ten issues for our review:

I) Whether the Court erred in its treatment, division and assignment of Husband's pension since the contributions to the pension and the defined benefit plan portion were not in any manner properly evaluated, analyzed or divided notwithstanding that the separate pensions were the two most valuable marital assets.

II) Whether the Court erred by failing to address the patent error of the Master's report which only examined the contributions of the parties to their pension and did not divide, assign or distribute the much larger component of the defined benefit part of the pension which will pay Husband considerably more than Wife.

III) Whether the Court erred by failing to Order that the defined benefits portion of the parties' pensions should be subject to a Qualified Domestic Relations Order upon retirement of the parties with an equitable division between the parties.

IV) Whether the court erred by failing to equitably divide the Husband's contributions to his pension, said contributions constituting an entirely separate asset than the monthly benefits Husband will receive as part of his defined pension plan.

V) Whether in affirming the Master's report, the Honorable Court failed to consider all relevant factors and circumstances, including, but not limited to, the eleven factors outlined in section 3502 of the Divorce Code and Pa.R.C.P. 1920.54.

VI) Whether the Court erred and failed to apportion the marital debt based upon income and the ability to pay,

- 4 -

and, in the process, the Wife was assigned almost three times the amount of marital debt than that assigned to Husband.

VII)    Whether the Court erred by failing to equitably divide the proceeds from the sale of the marital home after finding that the Wife made a substantial contribution of $47,500.00 from an inheritance as a down payment on the marital home.

VIII)   Whether the Court erred by placing erroneous or inflated values on the personal property of the parties, such as the value of firearms.

IX)     Whether the Court erred in affirming a very nominal payment of alimony to [Wife] where the record supported a finding that a greater award of alimony was necessary as per the relevant factors set forth in 23 Pa.C.S.A. §3701 and Pa.R.C.P. 1920.54(b).

X)      Whether the Court erred by failing to award Wife any portion of counsel fees whenever the Master found a huge disparity in income and marital fault attributed to Husband.

Appellant's brief at 4-5. The Argument portion of Wife's brief is divided into six sections: Pension, Alimony, Division of Proceeds from Sale of the Marital Home, Assignment of Marital Debt, Personal Property, and Counsel Fees. We will address Wife's arguments in that order.

In certain counties, as is the case herein, a master conducts a hearing and there is no new hearing before the trial court. Thus, "the trial court is limited to the evidence presented before the master." **Cunningham v. Cunningham**, 548 A.2d 611, 613-14 (Pa.Super. 1988). "While the trial court is obliged to conduct a complete and independent review of the

- 5 -

evidence when ruling on exceptions, its scope of review . . . is limited to the evidence received by the master. *Id*.

"Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Busse v. Busse*, 921 A.2d 1248, 1257 (Pa.Super. 2007). Where the alleged error or abuse of discretion implicates a legal question, our standard of review is *de novo* and our scope of review is plenary. *Smith v. Smith*, 938 A.2d 246, 253 (Pa. 2007).

The purpose of equitable distribution is to "equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors." 23 Pa.C.S. § 3502(a). The objective is to effectuate economic justice between the parties who are divorced and insure a fair and just determination and settlement of their property rights. *Isralsky v. Isralsky*, 824 A.2d 1178, 1185 (Pa.Super. 2003).

The relevant factors when fashioning equitable distribution awards are set forth in 23 Pa.C.S. § 3502(a):

> [T]he trial court must consider the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the

- 6 -

other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation or appreciation or marital property, value of each party's separate property; standard of living established during the marriage; economic circumstances of each party and whether the party will be serving as custodian of any dependent children.

***Mercatell v. Mercatell***, 854 A.2d 609, 611 (Pa.Super. 2004). "The weight accorded the various factors is dependent on the circumstances and is a matter within the court's discretion." ***Id***. (citing ***Gaydos v. Gaydos***, 693 A.2d 1368, 1376 (Pa.Super. 1997) (*en banc*)).

We observe preliminarily that the master maintained that he used the immediate offset method to compensate Wife for her marital share of Husband's higher pension contributions. However, in assigning assets and liabilities to the parties, he did not explain or document how his allocations achieved the desired offset and equitable distribution. Thus, it is difficult for this Court to correct any errors without upsetting the entire scheme.

Wife first alleges error in the valuation and treatment of the parties' pensions. She faults the master for simply considering the parties' contributions to their respective pensions rather than identifying the percentage of the split in the marital assets and ordering the parties to prepare Qualified Domestic Relations Orders ("QDROs").[1] Wife represents

_____

[1] "A QDRO is an order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the plan. To be 'qualified,' the order must contain certain required
*(Footnote Continued Next Page)*

that she was seeking sixty percent of the marital portion of Husband's pension, but that the Master merely considered Husband's contributions and never determined the percentage of the defined benefit to which she was entitled. Defendant's Exhibit F, the statement of Husband's pension as of December 31, 2011, revealed a present value of his retirement under Option I of $355,841.57 and under Option II, $287,571.91. These values were estimated to increase in approximately five to six years to $710,222.91 and $584,592.29 respectively. According to Wife, both parties anticipated that the Master would order the pensions to be valued pursuant to QDROs.

Husband takes issue with Wife's characterization of the defined benefit as a separate component of a state employee pension. He disputes that there should be both a division of the employee/spouse's contributions and a second division of the employer's contributions. Husband acknowledges, however, that both employee and employer contributions are "utilized to determine the monthly defined pension benefit an employee spouse is entitled to collect upon his or her retirement." Appellee's brief at 14. He agrees that in case of divorce, the court can enter a QDRO which divides the monthly pension benefit among the parties using a coverture fraction, and

_(Footnote Continued)_ ───────────────

information and may not alter the amount or form of plan benefits." **Smith v. Smith**, 938 A.2d 246, 248 n.3 (Pa. 2007). Our High Court also pointed out that the actual qualifying of the order is done by the employer's pension administrator.

that the value can be determined either by the immediate offset method or by the deferred distribution method. Husband accuses Wife of valuing her own pension based solely on her employee contributions, but seeking to value Husband's plan based on both employee and employer contributions, a comparison of apples and oranges. *Id*. at 16. He claims that no significant disparity exists in the present value of their respective plans. Furthermore, he claims the master had no choice but to use the contributions since Wife did not supply a value for her defined benefit.

When determining what assets comprise the marital estate for purposes of equitable distribution, retirement pension benefits are marital property subject to division. *Marshall v. State Employees' Retirement System*, 887 A.2d 351 (Pa.Cmwlth. 2005). Both parties herein have defined benefit plans through the state that they acquired during the marriage. In divorce situations, where marital assets are sufficient to cover the nonemployee spouse's share of the pension, immediate offset is the preferred method of distribution of those pensions. *See Dean v. Dean*, 98 A.3d 637, 643 (Pa.Super. 2014) (recognizing that immediate offset method avoids ongoing entanglement, court supervision, enforcement, and finalizes settlement). In many instances, however, such as where the pension constitutes the bulk of the marital estate and the nonemployee spouse's share cannot be covered by other marital assets, distribution of the marital portion must be deferred until retirement, with the defined benefit plan

being allocated between its marital and non-marital portions by use of a coverture fraction.

We find merit in Wife's position. In the instant case, the master erred in valuing only the parties' contributions to their respective plans and then using the immediate offset method to award Wife marital assets equivalent to her share of Husband's contributions. The trial court, in overruling Wife's exceptions, mistakenly believed that the pensions had not vested, and cited **Miller v. Miller**, 577 A.2d 205 (Pa.Super. 1990), for the proposition that in valuing unvested pensions, the court considers only contributions made up to the date of final separation. Trial Court Opinion, 3/20/14, at 7. The court then concluded that since the master valued Husband's pension from the closest available time to the date of separation, the value was correct, and the use of the immediate offset method was proper. **Id**. at 8. It is undisputed that both Husband's and Wife's pensions had vested, and thus, this was reversible error.

The record indicates that if Husband were to retire as of December 31, 2010, under Option I his pension had a present value of $308,615.95. **See** Plaintiff's Exhibit 8. Defense Exhibit F contained a present value calculation of $355,881.57 for a December 31, 2011 retirement date. If Husband waited until April 15, 2019 to retire, the present value of Option I was $698,072.50.

Husband attempts to justify the master's method of valuation by pointing to the fact that Wife did not value her defined benefits plan. He argues that Wife is seeking to obtain sixty percent of the present value of Husband's defined benefit plan but limit Husband's share of her pension to a percentage of her contributions. We do not believe that is a fair characterization of Wife's position. Wife has maintained throughout that the master incorrectly evaluated both pensions. She acknowledges that the present value of her defined benefit plan was not on the statement. The absence of that calculation may be due to the fact that Wife was twenty-two years away from retirement when the statement issued. Nonetheless, the present value of Wife's defined benefit plan is not required if the distribution of the retirement benefits is to be deferred. A finding as to present value is necessary only if the retirement benefits are to be awarded to one spouse with an offset to the other. *Gordon v. Gordon*, 681 A.2d 732, 733 (Pa. 1996) (noting that in a deferred distribution, one identifies the marital share of the benefit but does not value it).

The trial court erroneously treated the vested pensions as unvested and valued only the parties' contributions, not the significantly higher present value of the defined benefit portions. Husband's defined benefit is probably the largest marital asset. Moreover, the record suggests that Wife's portion of the marital assets, including the present value of her defined benefit plan, would not be sufficient to offset its value. Thus, it was

error not to identify the marital portion of the respective pensions, and we reverse and remand for such a determination.

Furthermore, it is unclear from the record whether Husband's pension is in payment status, which must be verified.[2]  Moreover, if distribution is to be deferred, the trial court is directed to order the parties to draft and submit proposed QDROs as to the other's pension.  Since in all likelihood this will disturb the prior equitable distribution scheme, the court is authorized to reallocate the marital assets and debts based upon the correct valuation to achieve economic justice.  Thus, we reverse and remand the matter to the court of common pleas for an equitable distribution determination of the marital portion of both Husband's and Wife's pensions, which includes the defined benefit plans.

Next, Wife challenges the amount of the alimony award.  She contends that the trial court erred in affirming a very nominal alimony payment where the record supported a reasonable need for a greater award.  The court awarded Wife $435 per month until August 2018, the date when Wife is scheduled to receive a substantial increase in salary.  She has no objection to the duration of the alimony, but argues that in arriving at that amount, the master and the trial court failed to consider other relevant 23 Pa.C.S. § 3701 factors such as the disparity in the parties' income.  Wife points out

_____

[2] It is unconfirmed in the certified record whether Husband did in fact submit his resignation to the Pennsylvania State Police.

that Husband's gross earnings were approximately double Wife's gross income, and that Husband will receive a thirteen percent increase in his State Police salary over the next four years. Wife testified that she faced a substantial deficit each month. Although she no longer has to pay the $1,360 mortgage on the marital home each month, she represents that a reasonable rental that would accommodate the couple's two sons would cost at least $800 per month. She estimated a shortfall of approximately $1,100 per month. In contrast, according to Wife, Husband had few expenses because he lived with his girlfriend in her home.

As set forth in 23 Pa.C.S. § 3701(b), in determining whether to award alimony, and if so, the amount, duration, and manner of payment, the relevant factors are:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8)   The standard of living of the parties established during the marriage.

(9)   The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the5 abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

23 Pa.C.S. § 3701.

The master expressly adopted his findings of fact for purposes of equitable distribution in his alimony determination. Recommendations of Special Master, at 7. In addition, he found that Husband engaged in marital misconduct, which in conjunction with the parties' relative income and economic needs, warranted an award of alimony to Wife for a specific period of time. He then recommended an award of a $435 per month until August

2018, a sum that is roughly equivalent to the supplemental $400 per month that Wife used to receive because she was insured under Husband's health insurance policy and the additional thirty-five dollars she now has to pay for her own insurance coverage.

In overruling Wife's exceptions and adopting the master's recommendation, the trial court found that the master considered the relevant statutory factors and set forth his reasons for the amount and duration of alimony. We agree, and find no abuse of discretion. However, the trial court considered the relative assets and liabilities of the parties in adopting the master's recommendation. Since our determination regarding the parties' pensions may precipitate reallocation of the parties' assets and debts upon remand, we direct the trial court to re-evaluate the sufficiency of the alimony award in light of those changes.

We turn now to Wife's complaint that the trial court's division of the proceeds from the sale of the marital home constituted an abuse of discretion. It was undisputed that Wife contributed $47,500 towards the down payment for the house from an inheritance. The sale yielded net proceeds of $54,572.97, which the master recommended be divided $24,572.97 to Husband and $30,000 to Wife. Wife cites **Williams v. Williams**, 540 A.2d 563 (Pa.Super. 1988), in support of her contention that the additional $5,427.13 allocated to her failed to compensate her for her substantial contribution in the acquisition of this marital asset. She suggests

- 15 -

that if the court had awarded her the first $23,750, which was half of her original contribution, and then an equal split of the remaining $23,750, "a much more equitable result would have occurred." Appellant's brief at 35.

Husband concedes that typically, property acquired by inheritance is considered to be non-marital property. However, where, as here, the inheritance was placed in joint name and subsequently used to purchase a jointly-held asset, it is converted into a marital asset and subject to equitable distribution. **Bold v. Bold**, 516 A.2d 741 (Pa.Super. 1986). Wife does not disagree.

The master's allocation of fifty-five percent of the net proceeds from the sale of the home to Wife versus forty-five percent for Husband would appear at first blush to reflect Wife's substantial contribution to the down payment. However, as the master explained, one-half of the cost of the California trip and Husband's tattoo, the difference between the parties' pension contributions, and the difference in the value of the personal property awarded to the parties were "considered . . . in determining the split of the proceeds of the marital residence." **See** Special Master's Report, 11/20/13, at 12. The trial court adopted the master's recommendation.

Since the master factored in the difference in the parties' pension contributions rather than the value of their defined benefit plans in his allocation of the net proceeds from the sale of the marital home, that determination is impacted by our reversal. Upon remand, the trial court

should revisit the allocation of the net proceeds from the sale of the home when it reallocates the marital assets generally, and in so doing, reflect Wife's substantial contribution to the acquisition of that asset.

We turn now to Wife's complaint that the trial court abused its discretion in burdening her with three times as much of the marital debt as Husband despite the fact that his income is more than twice her income. Wife introduced evidence that the marital debt totaled $46,000. *See* Exhibit K. First, Wife objects to the trial court's assignment of the largest single item of debt, approximately $18,000 in school loans, to her. She maintains that the student loans of $6,000 to $8,000 per semester were used to pay for her teaching certification at California University of Pennsylvania and the costs of redoing the kitchen of their Franklin Street home and other living expenses. N.T., 7/29/13, at 151.[3]

At the hearing, Wife's testimony was vague regarding the student loans. She was unable to confirm the total amount of the loan, or testify with any specificity what portion was used for her education and how much was spent on the kitchen remodel. The trial court characterized Wife's testimony in this regard as "convoluted." Trial Court Opinion, 3/20/14, at 9.

---

[3] Wife testified that her West Virginia University graduate school education was paid for by a tuition waiver, scholarship, employment at the school, and her grandmother's generosity. Husband acknowledged that Wife's grandmother gave her $15,000 for educational purposes, that West Virginia University waived tuition, and that Wife worked part-time while attending that institution.

While Wife represents herein that she "testified very credibly that the money she borrowed for student loans was used for a host of marital matters[,]" Appellant's brief at 37, the trial court deferred to the master's conclusions. Trial Court Opinion, 3/20/14, at 10.

We note that the master found that Husband contributed to Wife's graduate degree at West Virginia University, a factual finding that is not supported by the record. It was undisputed that Wife paid no tuition, that she was given a fellowship, she worked at the University part-time, and received $15,000 from her grandmother to defray educational expenses. There is evidence, however, that Wife borrowed sums to pay for her teaching certification at California University of Pennsylvania. However, we cannot reconcile the master's finding that Husband contributed to Wife's teacher certification and earning power with his assignment of sole responsibility for the repayment of all student loan debt to Wife.

With regard to the debts generally, Wife observes that the master simply assigned the debt to the party contractually obligated to repay the debt. According to Wife, this is not an equitable basis for apportioning marital debt. Furthermore, since the master did not list the dollar amount of the debt, she suggests that the master did not realize how much debt he was actually assigning to the respective parties. In support of that position, Wife points to the fact that the master held her responsible for the balance

of the Chase Visa, $3,700 of which was incurred for the parties' trip to Santa Monica and Husband's $1,000 tattoo.

As we observed *supra*, the master expressly stated that Wife received a higher percentage of the net proceeds of the sale of the parties' home due in part to his offset of one-half of the cost of the trip to Santa Monica and Husband's tattoo. It is apparent that the master allocated marital debts and assets to effect an equitable distribution scheme. Since our reversal disturbs that scheme, we direct the trial court to re-examine the debt allocation upon remand.

Wife also challenges the valuation of the personal property of the parties. She alleges that the values assigned to items of personal property that Husband left behind in the marital home was inflated. Wife points to Husband's $10,000 value placed on "miscellaneous furniture" in the marital home, in addition to bedroom furniture he separately valued at $1,000, living room furniture at $550, and a dining room table valued at $400. On cross-examination, Husband conceded that the $10,000 figure was probably high. N.T., 7/29/13, at 110. Wife valued the furnishings at $1,790. Although some furniture pieces were family heirlooms, Wife testified that they were not worth any substantial amount. Despite the fact that neither party identified or substantiated the value of the miscellaneous furniture, the master accepted Husband's "probably high" figure in valuing it at $10,000. The trial court deferred to the master in the face of conflicting evidence.

In light of Husband's own admission that the $10,000 figure he placed on miscellaneous furnishings was "probably high," we find little record support for that valuation. Since we are remanding for the purpose of properly calculating the parties' defined benefit plans as marital assets, an endeavor that will upset the entire scheme of equitable distribution, we direct the trial court to also revisit the value assigned to this marital asset.

Finally, Wife claims that the court abused its discretion in denying her some portion of her counsel fees. Wife introduced evidence that she had incurred $11,820.50 in legal fees as of the hearing and that she paid $6,500 of those fees. N.T., 7/30/13, at 34. The master, without explanation, recommended that the parties be responsible for paying their own counsel fees, and the trial court agreed.

In determining whether an award of counsel fees is warranted, the relevant factors are the requesting party's financial resources and ability to pay, and the property received in equitable distribution. The purpose is to place the parties on par with one another. Husband counters that the amount of Wife's unpaid attorney's fees was not delineated and argues further that there was no testimony presented to establish that the fees were reasonable.

Our standard of review of an award of counsel fees is well settled: we will not disturb a trial court's determination absent an abuse of discretion. *Verholek v. Verholek*, 741 A.2d 792, 795 (Pa. Super. 1999). A trial court

has abused its discretion if it failed to follow proper legal procedures or misapplied the law. *Id*. Herein, the trial court correctly noted that generally parties are responsible for their own attorney's fees unless there is an exception, statutory authority, or an agreement to the contrary. *Mantell v. Mantell*, 559 A.2d 535 (Pa.Super. 1989). The showing of actual need is an exception. *Harasym v. Harasym*, 614 A.2d 742, 747 (Pa.Super. 1992).

The master offered no rationale for his denial of Wife's request for counsel fees. He made no factual findings regarding Wife's actual need, ability to pay, or the reasonableness of the fees. The trial court overruled Wife's exception, stating that it "considered the counsel fees and related expenses incurred by Wife, the equitable distribution in this case, and the parties' respective incomes" in arriving at its belief that "Wife has sufficient assets and income to pay her counsel." Trial Court Opinion, 3/20/14, at 13. As the trial court's decision to deny Wife's request for counsel fees was based on the master's failure to identify and allocate the marital portions of the parties' defined benefit plans, which will likely alter the entire equitable distribution scheme, we instruct the trial court to re-examine its finding.

Accordingly, for the foregoing reasons, we reverse and remand for the proper calculation of the parties' pensions and concomitant alterations to the equitable distribution scheme to effectuate economic justice and ensure and fair and just determination. In anticipation of those changes, we direct the

trial court to revisit the amount of the alimony award and the request for counsel fees.

Order reversed and remanded for further proceedings consistent with instructions.

Jurisdiction Relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2015