J-S24002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CADLEROCK JOINT VENTURE II, L.P., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ERIC M. GATESMAN | : | No. 1488 MDA 2015 |

Appeal from the Order entered July 31, 2015
in the Court of Common Pleas of Dauphin County,
Civil Division, No(s):  2013 CV 5127 DJ

BEFORE:  GANTMAN, P.J., BOWES and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JULY 08, 2016**

Cadlerock Joint Venture II, L.P. ("Cadlerock"), appeals from the Order granting the Motion for Sanctions filed by Eric M. Gatesman ("Gatesman"), and directing Cadlerock to pay Gatesman $2,500 for attorney's fees.  We affirm.

The trial court set forth the relevant factual and procedural history underlying this appeal as follows:

> On August 26, 2000, [Gatesman] co-signed a $6,000 Education Loan Application and Promissory Note (hereinafter "Loan and Note") for the benefit of Amy N. Frehn (hereinafter "[] Frehn").  [Gatesman was not the recipient of any money from the $6,000 loan (hereinafter "the Loan").]  At the time of the signing, [Gatesman] and [] Frehn were involved in a romantic relationship[, while Frehn was enrolled at Penn State University].  Thereafter, [Gatesman] and [] Frehn ended their relationship and went their respective ways.
>
> On April 12, 2013 – approximately twelve and a half [] years later – [Cadlerock] filed a Civil Complaint [against Frehn] with [a] Magisterial District Ju[dge] in Huntingdon County, Pennsylvania, alleging that [Cadlerock is] the owner[] of the

Loan and Note,[1] that the Loan and Note are in default,[2] and attempting to collect the unpaid balance from [] Frehn. Judgment was found in favor of [Cadlerock], and [] Frehn was ordered to pay $5,391.36[, the full amount due on the Loan]. [Frehn] appealed that decision to the Court of Common Pleas of Huntingdon County. Prior to any action on the [*de novo*] appeal, [Cadlerock] and [] Frehn reached an agreement wherein [] Frehn would pay $2,710.00 to [Cadlerock] as [a] full accord and satisfaction of [her obligation under] the Loan and Note. A release ["the Release"] was drafted to that effect and signed by … [] Frehn on July 22, 2013.

On April 15, 2013[, Cadlerock] filed a Civil Complaint [against Gatesman] with [a] Magisterial District Ju[dge] in Dauphin County, Pennsylvania, alleging that [Cadlerock is] the owner[] of the Loan and Note, that the Loan and Note are in default, and attempting to collect the unpaid amount from [Gatesman.[3]] Judgment was found in favor of [Gatesman] on May 27, 2013. On June 12, 2013, [Cadlerock] appealed the judgment to the Court of Common Pleas of Dauphin County.

* * *

[Cadlerock] filed a Civil Complaint against [Gatesman, in the Dauphin County Court of Common Pleas,] on June 26, 2013. [Gatesman] filed timely [P]reliminary [O]bjections. Before a decision was made on the [P]reliminary [O]bjections, [Cadlerock] filed an Amended Complaint on August 28, 2013. [Gatesman] again filed timely [P]reliminary [O]bjections, which were subsequently withdrawn. [Gatesman] filed an Answer and New Matter to the Amended Complaint on October 22, 2013. [Cadlerock] filed an Answer to New Matter on November 4, 2013. The matter was submitted to [compulsory a]rbitration on January 8, 2014.

---

[1] The Loan and Note contains a choice of law provision stating that it is governed by South Dakota law. The bank that originally issued the Loan, Cadlerock's predecessor-in-interest, was based in South Dakota.

[2] Frehn had made only one monthly installment payment on the Loan, of $400, in May 2002. Thereafter, neither she nor Gatesman made any further payments.

[3] Cadlerock's Complaint sought from Gatesman the full amount due on the Loan.

On February 20, 2014, an [a]rbitration [h]earing was held in the above-captioned matter. The Arbitration Panel found in favor of [Gatesman, and entered an award (hereinafter "the Arbitration Award").[4]] On May 7, 2014, [prior to the entry of judgment, Gatesman] filed a Motion for Sanctions pursuant to Pennsylvania Rule of Civil Procedure 1023.1.[5]

---

[4] Neither party appealed the Arbitration Award.

[5] Rule 1023.1 provides, in pertinent part, as follows:

(c) The signature of an attorney or *pro se* party constitutes a certificate that the signatory has read the pleading, motion, or other paper. By signing, filing, submitting, or later advocating such a document, the attorney or *pro se* party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law,

(3) the factual allegations have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual allegations are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(d) If, after notice and a reasonable opportunity to respond, the court determines that subdivision (c) has been violated, the court may, subject to the conditions stated in Rules 1023.2 through 1023.4, impose an appropriate sanction upon any attorneys, law firms and parties that have violated subdivision (c) or are responsible for the violation.

Pa.R.C.P. 1023.1(c), (d).

Prior to filing the Motion for Sanctions, [Gatesman's counsel] sent [Cadlerock's counsel] a [letter asserting] that the Complaint was barred by the statute of limitations[6] and should be withdrawn within twenty-eight [] days[,] or a motion for sanctions would be filed upon resolution of the claim[, pursuant to Rule 1023.1].  Since [Cadlerock] did not appeal the Arbitration Award, the matter was resolved when the time for appeal of the [A]rbitration [A]ward expired.

After a number of continuances, a hearing on [Gatesman's] Motion for Sanctions was held on April 24, 2015 [(hereinafter "the Sanctions Hearing").[7]]  At the conclusion of the [Sanctions H]earing, the [trial c]ourt took the matter under advisement, and allowed both parties to submit proposed findings of fact and conclusions of law ….  On July 3[1], 2015, th[e trial c]ourt entered an Order awarding [Gatesman] $2,500 in counsel fees.[8]  On August 31, 2015, [Cadlerock] filed a Notice of Appeal.  On September 3, 2015, [Cadlerock] was directed to file a [Pa.R.A.P. 1925(b)] Concise Statement of Matters Complained of on Appeal.

Trial Court Opinion, 10/12/15, at 1-3 (footnotes added).  Cadlerock

thereafter timely filed a Concise Statement.

Cadlerock now presents the following questions for our review:

  A. Whether the [trial] court erred when it exercised jurisdiction over [Gatesman's] Motion for [S]anctions on the basis that [Cadlerock] did not file a praecipe to have the [Arbitration A]ward [] entered on the judgment index, when the Motion was not filed until seventy-six

_____

[6] Though the issue of the statute of limitations was contested in the underlying litigation, and Gatesman again raises this issue in his appellate brief, for the purpose of the instant appeal, we decline to address the issue.

[7] Cadlerock's sole witness at the Sanctions Hearing was Nina Evans ("Evans"), a representative of Cadlerock.  Relevant to this appeal, Evans testified concerning the Release and its preparation.

[8] In the Motion for Sanctions, Gatesman asserted that he had incurred attorney's fees and costs in excess of $6,000.  Motion for Sanctions, 5/7/14, at ¶ 17.

- 4 -

days after the Prothonotary notified the parties that the [Arbitration A]ward [] was entered on the docket[,] and no appeal from the [A]ward was taken[?]

B.  Whether the [trial] court erred in granting [Gatesman's] Motion for [S]anctions on the basis of an accord and satisfaction with one co-signer of [the Loan and N]ote, when an accord and satisfaction of the [Loan and N]ote was not the agreement reached by those parties[?]

C.  Whether the [trial] court erred [in] granting [Gatesman's] Motion for [S]anctions on the basis of an accord and satisfaction when the [Loan and N]ote was governed by South Dakota law, which permits a settlement with one co-signer for some of [the] monies due under a judgment on the [Loan and N]ote[,] while pursuing the remainder of monies due under the [Loan and N]ote against the other co-signer[?]

Brief for Appellant at 3 (capitalization omitted).

We review a trial court's ruling on a motion for sanctions for an abuse of discretion. *See Dean v. Dean*, 98 A.3d 637, 644 (Pa. Super. 2014). A trial court has "significant discretion" in determining whether to impose sanctions. Pa.R.C.P. 1023.1 cmt. (2003).

Cadlerock first argues that the trial court lacked jurisdiction to rule on the Motion for Sanctions, and did not retain jurisdiction by means of Gatesman's failure to file a praecipe to enter judgment on the Arbitration Award. *See* Brief for Appellant at 18-23. Cadlerock contends that the Arbitration Award, entered on the docket following compulsory arbitration, served as a final, appealable judgment. *Id.* at 19 (citing *Stivers Temp. Pers. v. Brown*, 789 A.2d 292, 294 (Pa. Super. 2001) (stating that "[u]pon entry of the compulsory arbitration award on the docket and appropriate

notice, the award [takes] the force and effect of a final judgment[,]" and an "[a]ppellant's only recourse to challenge [a] compulsory arbitration award [is] to file for a trial *de novo* with the Court of Common Pleas within 30 days.")). Cadlerock points out that Gatesman filed the Motion for Sanctions 76 days after the Arbitration Award, and neither party filed an appeal therefrom.[9] Brief for Appellant at 20. Thus, Cadlerock asserts, the trial court was divested of jurisdiction 30 days after the entry of the Arbitration Award; any ruling on the Motion for Sanctions is therefore void. ***See id.*** at 21-22 (relying upon ***Freidenbloom v. Weyant***, 814 A.2d 1253, 1255 (Pa. Super. 2003) (stating that absent an appeal, a trial court's jurisdiction generally extends for only thirty days after the entry of a final order)).

In its Opinion, the trial court addressed Cadlerock's claim and aptly summarized the applicable law as follows:

> A party seeking sanctions pursuant to Rule 1023.1 must first provide written notice [of] a demand for withdrawal or correction of the paper promptly after the appropriate paper is provided. Pa.R.C.P. 1023.1 cmt. (2003). If the paper is not withdrawn or corrected within twenty-eight [] days, the aggrieved party may file a separate motion describing the specific conduct alleged to violate Rule 1023.1(c). Pa.R.C.P. 1023.2(a). That motion must be filed in the trial court at least twenty-eight [] days after notice is provided, and **prior to entry of final judgment**. Pa.R.C.P. 1023.2(c). … [A] Court may defer its ruling on the motion until final resolution of the case. [Pa.R.C.P. 1023.1 cmt. (2003).]

---

[9] Cadlerock asserted that it made a "business decision" to forego an appeal of the Arbitration Award, though Cadlerock still believed that its action was meritorious. Proposed Findings of Fact and Conclusions of Law, 5/18/15, at ¶¶ 20-21.

> In Dauphin County, all civil actions in which the amount in controversy is $50,000 or less must be submitted and heard by a Board of Arbitration. Dauphin County Local Rule No. 1301(1). Following a hearing, the Board will enter an award on the docket. Pa.R.C.P. 1306. Once an award is docketed, either party has thirty [] days to file a *de novo* appeal with the Court of Common Pleas. If no appeal is taken, either party may then file a praecipe with the Prothonotary to enter judgment on the award. Pa.R.C.P. 1307(c) [(providing that "[i]f no appeal is taken within thirty days after the entry of the award on the docket, the prothonotary **on praecipe** shall enter judgment on the award." (emphasis added)); **see also** Pa.R.C.P. 1307(c) note (providing that Pa.R.C.P. 3021(a)(3) requires the prothonotary to immediately enter in the judgment index a judgment entered *on praecipe* of a party.") (emphasis added)]. Accordingly, *an*[] [*a*]*rbitration* [*a*]*ward alone is not an "entry of final judgment" for purposes of Rule 1023*[*.1; rather,*] *a party must praecipe to have the* [*a*]*ward entered as a final judgment on the docket*. In the instant case, the Arbitration Award was never reduced to an entry of judgment on the docket.

Trial Court Opinion, 10/12/15, at 5-6 (emphasis added; original footnote citations moved to body).

Cadlerock contends that it is immaterial that the Arbitration Award was never reduced to judgment on the docket, because the Order docketing the Arbitration Award itself served as a final judgement, and, under **Freidenbloom**, **supra**, the trial court was divested of jurisdiction thirty days after the entry of the Arbitration Award. We disagree and determine that **Freidenbloom** is unavailing.

The plaintiff in **Freidenbloom** filed a praecipe to discontinue the action, and 36 days later, the defendant filed a motion for attorney's fees under 42 Pa.C.S.A. § 2503(9) (concerning litigation that is arbitrary, vexatious or in bad faith). **Freidenbloom**, 814 A.2d at 1254. This Court

held that the defendant's motion was untimely, and the trial court's award of attorney's fees was therefore improper, citing 42 Pa.C.S.A. § 5505 for the proposition that a trial court retains jurisdiction to rule on a motion for attorney's fees that is filed within 30 days after final resolution of a case. *Freidenbloom*, 814 A.2d at 1255-56. The Court explained that

> [a] trial court's jurisdiction generally extends for thirty days after the entry of a final order:
>
> > Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.
>
> 42 Pa.C.S. § 5505. After the 30[-]day time period, the trial court is divested of jurisdiction. A praecipe to discontinue a case constitutes a final resolution of all issues. Further, a praecipe for discontinuance has the same effect as a judgment entered in favor of the defendant. Thus, since a praecipe for discontinuance constitutes a final resolution of the case and has the effect of a final judgment, a trial court may consider a petition for fees filed within a period of 30 days after the filing of the praecipe.

*Freidenbloom*, 814 A.2d at 1255. However, our Supreme Court has explained that "*Freidenbloom* stands for the proposition that a praecipe to discontinue constitutes a final judgment, and that a trial court may only act on a motion for fees that is filed within 30 days from final judgment. … *Freidenbloom* does not address whether the entry of judgment is dispositive of a motion for fees filed prior to judgment." *Miller Elec. Co. v. DeWeese*, 907 A.2d 1051 1055 (Pa. 2006) (finding *Freidenbloom*

inapposite where the motion for attorney's fees was filed prior to the entry of judgment).

Similarly, in the instant case, final judgment was not entered prior to Gatesman's filing of the Motion for Sanctions.[10] The trial court properly determined that under Pa.R.C.P. 1307(c), the Order entering the Arbitration Award on the docket did not, itself, constitute entry of final judgment for purposes of Rule 1023.1. **See** Trial Court Opinion, 10/12/15, at 6. Moreover, we are persuaded by Gatesman's argument that he "purposely did not file a [p]raecipe to enter judgment on the [Arbitration A]ward …, for the very purpose of complying with Rule 1023.2. Judgment was left open in order for the [trial c]ourt to retain jurisdiction." Brief for Appellee at 23; **see also** Pa.R.C.P. 1023.2(c). Accordingly, Cadlerock's first issue does not entitle it to relief.

Next, Cadlerock contends that the trial court erred in granting the Motion for Sanctions, finding that Cadlerock had violated Rule 1023.1(c)(2) by continuing to pursue its claim against Gatesman after the satisfaction of the Loan by means of the Release executed by Frehn. Brief for Appellant at 23. According to Cadlerock, contrary to the trial court's ruling, Frehn's settlement payment of $2,710.00 (hereinafter "the settlement payment"), made in connection with the Release, did not constitute an accord and

---

[10] Additionally, while **Freidenbloom** concerned a motion for attorney's fees under 42 Pa.C.S.A. § 2503, the instant case involves a motion for sanctions under Pa.R.C.P. 1023.1, and its companion rule, Pa.R.C.P. 1023.2(c), which expressly provides that a Rule 1023.1 motion for sanctions must be filed prior to the entry of final judgment.

satisfaction of the Loan, and Cadlerock was within its rights to pursue Gatesman for the remaining amount due on the Loan. *Id.* at 23-24.

The Release concerns Frehn's obligation for the judgment entered against her in magisterial court, $5,391.36, *i.e.*, the full amount due on the Loan, and sets forth the amount of the settlement payment. *See* Motion for Sanctions, Exhibit B (the Release), 5/7/14. The Release (which is atypical for reasons we explain below) provides, in relevant part, as follows:

> As consideration [], [Frehn] agree(s) to execute this Release in favor of [Cadlerock] and its affiliates [], as third party beneficiaries. [Frehn] … hereby releases, acquits and forever discharges [Cadlerock], their agents, servants and employees, and all persons and entities in privity with them or any of them, from any and all claims or causes of action of any kind whatsoever, … which [Frehn] and those on whose behalf [Frehn] sign(s) has … related to the above described Note(s) and/or Judgment(s), this Release being intended and understood to release all present and future claims of any kind which [Frehn] and those on whose behalf [Frehn] sign(s) might have against those hereby released ….

*Id.*

In its Opinion, the trial court explained its reasons for finding an accord and satisfaction by means of the Release as follows:

> The purpose of a co-signer is to protect the lender if the borrower defaults and is unable to make any payments. The lender can then pursue the co-signer for payments. Typically, once a loan has been satisfied, by whatever means, then the lender can no longer pursue the borrower or co-signer. This gives co-signers assurance that once a loan has been satisfied, discharged, or paid in full, the co-signer no longer has any obligation to pay on the loan. The instant matter is an atypical factual scenario – the lender released the borrower from any future obligations in satisfaction of the [L]oan, and then continued to pursue the co-signer for the difference.

Allowing a lender to pursue a co-signer for payment after the loan has been satisfied goes against public policy, and would cause significant issues for lenders. People would be less inclined than they already are to co-sign a loan for a friend or family member. If a borrower cannot be approved for a loan without a co-signer, and no one wants to co-sign for fear of having to make payments after satisfaction of the loan, then lenders will be left with two options: (1) approve the loan with no guarantee of repayment; or (2) reject the borrower's application. It is highly unlikely that a lender would approve a loan with no guarantee of repayment, and would most likely reject the application. This would have a detrimental effect upon the market.

In the instant matter, [Cadlerock] filed suit [against Gatesman] in the magisterial district court on April 15, 2013. On May 27, 2013, Magisterial District Judge Michael J. Smith found in favor of [Gatesman]. [Cadlerock] appealed to the Common Pleas Court on June 12, 2013. [] Frehn satisfied the [L]oan and signed [the R]elease on July 22, 2013. At this point, [Cadlerock] was aware or should have been aware that the [L]oan had been satisfied, thus it could no longer pursue payment from the co-signor ([Gatesman]). Despite the satisfaction of the [L]oan, [Cadlerock] pursued litigation against [Gatesman].

In addition, [] Evans['s] testimony [at the Sanctions Hearing] regarding the circumstances surrounding the [R]elease … was quite compelling. The following dialogue occurred on the record:

Q [Gatesman's counsel]: Let me rephrase the question. Was it the intention of [Cadlerock], in preparing the [R]elease, to release [] Frehn from any further liability on account of the [N]ote that Cadlerock would sue her and obtained a full amount of the judgment for?

A [Frehn]: We agreed – yes, **we agreed to satisfy her judgment upon receipt of those funds**.

(N.T. Sanctions Hearing[,] 4/24/15[,] at p. 21) [(emphasis added)].[11] [Cadlerock] argued that the language of the

_____

[11] We observe that Evans went on to state on redirect that, in preparing the Release, Cadlerock did not intend to release Gatesman from his obligation under the Loan and Note. N.T., 4/24/15, at 21.

[R]elease … did not release [] Frehn from any claims that she could make against Cadlerock. Rather, the language releases Cadlerock from any claims that [] Frehn could make against it. The [trial c]ourt found the language in the [R]elease to go against public policy and common sense.

Typically, when a lender and borrower reach an agreement wherein the borrower agrees to pay a certain amount of money in exchange for full satisfaction of the loan in question, it is referred to as accord and satisfaction. [] Evans'[s] testimony at the Sanctions Hearing confirmed the intention of [Cadlerock] to satisfy the [L]oan in exchange for [the settlement] payment by [] Frehn. However, the language of the [R]elease is not consistent with the intention of [Cadlerock]. Accordingly, the [trial c]ourt found that accord and satisfaction of the [L]oan … occurred on July 22, 2013, the date when [] Frehn signed the [R]elease.

The [trial c]ourt does not find that [Cadlerock's] initial filing of suit [against Gatesman] in magisterial district court, nor the appeal to the Common Pleas Court[,] was frivolous because the [L]oan had not been satisfied. However, once the [L]oan was satisfied, [Cadlerock] should have withdrawn the appeal in Common Pleas Court. Thus, the [trial c]ourt finds [] the continuing pursuit of the lawsuit against [Gatesman] after the [L]oan had been satisfied to be frivolous. Moreover, [Cadlerock] pursued the claim after receiving notice from [Gatesman] of [his intent] to seek sanctions. Accordingly, [the court] imposed sanctions in the amount of $2,500 on [Cadlerock] to deter [] frivolous actions in the future.

Trial Court Opinion, 10/12/15, at 13-15 (footnote added).

Cadlerock argues that the trial court erred by overlooking the language

of the Release in finding an accord and satisfaction of the Loan, stating that

[o]n its face, the [] Release is a complete contract. The object of the parties' agreement – the Huntingdon County litigation and judgment [against Frehn] – is clearly stated. The Release speaks in terms of that litigation and judgment, not the [Loan and] Note. The extent of the agreement is also clearly stated. Frehn releases Cadlerock and those in privity with Cadlerock, and pays $2,710.00 in exchange for Cadlerock foregoing its right to pursue the judgment.

Brief for Appellant at 24.

Though we acknowledge that the language of Release, quite perplexingly, released *Cadlerock* from further liability by Frehn's settlement payment on her loan obligation, we determine that the trial court did not err by looking beyond the "atypical" language of the Release to ascertain the intent of the contracting parties.[12] As mentioned above, Evans, Cadlerock's representative, made clear at the Sanctions Hearing that Cadlerock, in preparing the Release, intended to release Frehn, the primary obligor, from any further liability by her making the settlement payment. Moreover, we agree with the trial court that it would be unconscionable, and against public policy, to permit a lender to pursue a co-signer for payment after a loan has been satisfied by the primary obligor. The language of the inelegantly

---

[12] Cadlerock concedes that the Release does not include an integration clause. Brief for Appellant at 25.

drafted Release lends itself to an absurd and unconscionable result.[13] Accordingly, we discern no error of law or abuse of discretion by the trial court in imposing reasonable sanctions[14] upon Cadlerock under Rule 1023.1 for pursuing its action against Gatesman despite an accord and satisfaction of the Loan.

Finally, Cadlerock argues that the trial court "erred [by] granting [the] Motion for Sanctions on the basis of an accord and satisfaction, as the [Loan and] Note is governed by South Dakota law[.]" Brief for Appellant at 27 (capitalization omitted). Cadlerock avers that under South Dakota law, Gatesman was jointly and severally liable under the Loan and Note as an "accommodation party," even though he did not receive any consideration

---

[13] In this regard, we are persuaded by the following argument by Gatesman:

> [B]ased on the face of the [] [R]elease, had Gatesman lost [against Cadlerock's action], and a judgment for the full amount of the claim against him was entered[, *i.e.*, the full amount due on the Loan], [Gatesman] could have then asserted a claim against [] Frehn[,] as the primary obligor[,] for contribution. [Frehn] would have naturally looked to [Cadlerock] based on their accord and satisfaction, [but Cadlerock] could have pointed to the [R]elease[,] claiming [that Frehn] had released [Cadlerock] from any further claim, thereby nullifying the accord and satisfaction. Or, with slightly different assumptions, there is nothing that [would] stop[] [Cadlerock] from suing Frehn again for the balance [remaining on the Loan after the settlement payment], since [Cadlerock had] not provided a full release to her.

Brief for Appellee at 28 n.14 (some capitalization omitted).

[14] We observe that the $2,500 sanction that the trial court imposed constituted less than half of the $6,000 in attorney's fees that Gatesman claimed in the Motion for Sanctions. Moreover, Gatesman has incurred additional attorney's fees in defending against the instant appeal.

for signing the Loan and Note. *Id.* at 27-28 (citing S.D.C.L. § 57A-3-419(b) (governing instruments signed for accommodation)).

Regardless of whether Pennsylvania or South Dakota law applies, Gatesman was clearly jointly and severally liable under the Loan and Note as a co-signer. Essentially, Cadlerock raises the same challenge as set forth above in its second issue, but under the guise of South Dakota law. We reach the same conclusion as discussed above, regardless of which jurisdiction's law applies. Gatesman's liability was extinguished following the accord and satisfaction. Accordingly, Cadlerock's final issue does not entitle it to relief.

As we discern no abuse of discretion or error of law by the trial court, nor any merit to Cadlerock's claims on appeal, we affirm the Order granting Gatesman's Motion for Sanctions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2016

- 15 -