J-A18016-14

2014 PA Super 169

| THOMAS A. DEAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JOAN A. DEAN | |
| Appellee | No. 2110 MDA 2013 |

Appeal from the Order of October 24, 2013
In the Court of Common Pleas of Berks County
Civil Division at No.: 10-4283

BEFORE:  LAZARUS, J., WECHT, J., and MUSMANNO, J.

OPINION BY WECHT, J.:                          **FILED AUGUST 13, 2014**

Thomas Dean ("Husband") appeals the October 24, 2013 order that denied his exceptions to a master's report regarding equitable distribution and that denied Husband's motion for sanctions.  After review, we hold that the trial court erred in denying one of Husband's exceptions.  Therefore, we vacate the order in part, affirm in part, and remand with instructions.

Husband and Joan Dean ("Wife") married on May 30, 1986, and separated in February 2010.  This was the third marriage for each party.  There were no children of the marriage, although both parties have children from their prior marriages.  On March 2, 2010, Husband filed a complaint in divorce.

On May 2, 2012, the court appointed a master to conduct a hearing and issue a report to resolve the parties' economic claims.  On August 8,

2013, Wife's mother, Violet Godfrey ("Godfrey") filed a petition to intervene because Godfrey was living in the marital residence and asserted that she had a "substantial interest" in the disposition and a "due process right to protect her right of possession" of the marital residence. On September 18, 2012, the trial court granted the parties' divorce and retained jurisdiction over the economic issues. On October 3, 2012, upon the consent of the parties, the trial court permitted Godfrey to intervene.

On March 14, 2013, the master conducted an equitable distribution hearing. On April 15, 2013, the master issued his report and recommendation and proposed order. In that report, the master concluded that the parties had two main assets, a cabin that had been sold with the proceeds being split equally, and the marital residence. As for the marital residence, the master applied a seven percent cost of sale and determined that the value available for distribution was $168,330. The master gave Wife a credit for the proceeds from Wife's former residence that were pre-marital and that she used in the purchase of marital residence. The master also found that Wife had arranged the loans for the marital residence and used money from a long-term savings plan with her employer. The master recognized that Wife received a "buy-out" from her employer that would be subject to a coverture fracture as a portion was marital. However, that buy-out plus money from Wife's retirement plan was used to pay off the marital

- 2 -

residence.[1]   The master applied the coverture fraction to the remaining equity in the marital residence to determine that $69,466 was the marital portion of the residence.  The master determined that a 75/25 split favoring Wife was equitable.   Wife was awarded the marital residence and was ordered to pay Husband $17,366.65.   Recognizing that Wife had limited liquid assets and an outstanding home equity line of credit, the master recommended that Wife be given options to pay Husband.  Specifically, Wife could execute a note for the total amount plus interest to act as a lien on the property to be paid when Wife sold the property or upon her death; Wife could pay the lump sum within ninety days; or Wife could make an initial payment of $5,000 within ninety days and make installment payments on the remainder plus interest over a period of three years.

On April 30, 2013, Husband filed exceptions to the report.  Also on April 30, 2013, Husband filed a motion for sanctions in which he argued that Godfrey made representations in her petition to intervene that were contradicted by her later deposition testimony and that Wife and Godfrey should be ordered to pay his counsel fees for responding to the petition.

_____

[1]   The master found that, around the same time Wife paid off the loans on the marital residence, Wife indicated that she wanted her children to receive the benefit of Wife's investment in the house.  Consequently, Husband transferred the deed into Wife's sole name and Wife executed a will that provided for the sale of the house upon her death from which her children would receive the first $80,000 of the proceeds and Husband would receive the remainder.

Following oral argument, on October 24, 2013, the trial court denied Husband's exceptions and his motion for sanctions. On November 22, 2013, Husband filed a notice of appeal. The trial court ordered, and Husband timely filed, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Thereafter, the trial court filed its opinion.

Husband presents three issues for our review:

1. Whether the lower court abused its discretion and/or committed an error of law in its calculation/determination of the value of the marital residence for the purposes of the equitable distribution and [Husband's] interest therein.

2. Whether the lower court abused its discretion and/or committed an error of law by allowing [Wife] to pay [Husband's] share of the marital assets upon her death.

3. Whether the lower court abused its discretion and/or committed an error of law by denying [Husband's] Motion for Sanctions.

Husband's Brief at 1-2.

We review an equitable distribution order according to the following standard:

The equitable distribution of marital property is within the sound discretion of the trial court and its decision will not be disturbed on appeal absent an abuse of discretion. Under the abuse of discretion standard, we are not to usurp the trial court's duty as the finder of fact. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence. . . . However, an abuse of discretion will be found by this Court if the trial court failed to follow proper procedure or misapplied the law.

***Hunsinger v. Hunsinger***, 554 A.2d 89, 92 (Pa. Super. 1989) (citations omitted).

Husband first argues that the trial court erred by affirming the master's application of a coverture fraction to the determination of the marital component of the marital residence and to Wife's buy-out. Husband asserts that the master lacked authority to do so. Husband also argues that, even if a portion of Wife's retirement account was pre-marital, Wife comingled the funds with a marital asset, rendering them marital assets. Husband contends that the entire value of the marital residence should have been considered marital property. In the alternative, Husband argues that, if a coverture fraction could have been applied, it should have only applied to the buy-out and not to the entire value of the marital residence. Husband's Brief at 6-8.

Wife owned a home prior to marriage. Approximately nine years into the marriage, Wife sold that property and applied the proceeds to the marital residence. The master found that Wife was responsible for the mortgage and swing loan that were used to finance the marital residence and that Wife paid off those loans using the buy-out she received when her employment ended and the retirement funds Wife withdrew. The master determined that Wife consumed the entirety of the buy-out by paying off the loans and by having work completed on the marital residence. The master concluded that the entirety of the funds to purchase and pay for the marital residence derived from Wife.

However, the master recognized that some portion of Wife's retirement funds and her buy-out were attributable to her years of employment during the marriage, and thus, constituted marital property. To determine the marital portion, the master divided the number of years that Wife worked during the marriage by the total number of years that Wife worked for her employer to determine a coverture fraction of 43.58 percent. The master then applied that percentage to the amount Wife received from her retirement and buy-out.

The master also decided to apply the coverture fraction to the value of the marital residence, because the funds Wife received were applied to the residence. In so doing, the master found it to be equitable to credit Wife for this non-marital property that had been co-mingled with a marital asset. Applying the coverture fraction and the 75/25 distribution scheme to the marital residence, the result was a higher amount to Husband than applying the coverture fraction to Wife's retirement fund and buy-out. The master found it equitable to award Husband the larger sum based, in part, upon the parties' ages and relative health and the length of the marriage.

The trial court found that the master's use of the coverture fraction was appropriate under these circumstances. The trial court recognized that, even though Husband deeded the marital residence to Wife, it remained marital property. However, the trial court found that Wife did not gift non-marital property to Husband when she paid off the marital residence, but instead, due to Wife's will that left the majority of the equity of the residence

to her children, Wife was engaging in financial planning. When Wife applied those funds to the house, she did so with the expectation that Husband would not have an interest in the residence beyond the residuary clause of her will. Therefore, the trial court found it to be equitable that the funds used for the marital residence were considered according to their original marital or non-marital designation before they were applied to the residence. Trial Court Opinion ("T.C.O."), 1/15/2014, at 7-9.

By statute, a coverture fraction[2] shall be applied to a defined benefit retirement plan when the court equitably divides such a plan. *See* 23 Pa.C.S.A. § 3501(c). Generally, a coverture fraction is not applied to other types of marital assets. Husband is correct that when a party co-mingles non-marital assets with marital assets, those assets generally are transformed into marital assets. *See Verholek v. Verholek*, 741 A.2d 792, 797 (Pa. Super. 1999). However, in certain circumstances, we have considered the value of pre-marital assets that were contributed to a marital asset to determine distribution.

_____

[2]  A coverture fraction is defined as follows: "[t]he denominator of the coverture fraction shall be the number of months the employee spouse worked to earn the total benefit [or the total accrued benefit as determined as close as possible to the time of trial] and the numerator shall be the number of such months during which the parties were married and not finally separated," depending upon whether immediate or deferred distribution of the plan is chosen. 23 Pa.C.S.A. § 3501(c).

For example, in **Lee v. Lee**, 978 A.2d 380 (Pa. Super. 2009), the wife purchased the marital residence and had paid part of the mortgage prior to the marriage. The wife re-financed the residence and the husband was included on the deed at that time, transforming the asset from pre-marital to marital property. At the time of re-finance, the wife paid the costs and part of the mortgage with funds from the sale of additional pre-marital property she owned. After re-financing, the wife paid off the balance of the mortgage with the remaining proceeds from her pre-marital property. The husband admitted that he contributed nothing to the marital residence. The court distributed the marital residence with 65 percent going to the wife. **Id.** at 384. Finding that the record did not support the distribution, we remanded with instructions for the trial court to determine the percentage of the value of the marital residence that was attributable to the wife's pre-marital interest, the funds from the wife's pre-marital assets, and from the joint assets, and to distribute the residence accordingly. **Id.** at 385.

This case is similar to **Lee**. While Wife did not own the marital residence prior to marriage, Wife paid for the mortgage from funds that were partly non-marital. Husband, by his own testimony, did not pay the mortgage and knew that Wife was using her retirement funds to pay for the house. Notes of Testimony ("N.T."), 3/14/2013, at 27, 39-40. Wife testified that she made every mortgage payment and paid all property taxes.

Deposition of Wife, 11/7/2012, at 8.[3] As in *Lee*, the master attempted to determine which percentage of the value of the marital residence was attributable to Wife's pre-marital assets and to give Wife credit for that percentage. While application of a coverture fraction may have been unorthodox, it accomplished that goal. Had the master deemed the entire residence to be marital property and merely given Wife a larger percentage of the marital residence, resulting in the exact same monetary distribution in recognition of her greater contribution to the asset, that too would have been an appropriate use of discretion. The use of a coverture fraction does not invalidate that use of discretion.

The master made, and trial court affirmed, conclusions regarding equitable distribution based upon the parties' circumstances, including their separate assets, contribution to the marital estate, health and age, and likelihood that each would acquire additional assets. Those conclusions are supported by the record and we find no abuse of discretion in the court's distribution of assets.

Husband next argues that the trial court abused its discretion in allowing Wife the option not to pay Husband his share of the marital residence until her death. Husband contends that he contributed to the expenses for the household yet may not see his share of the equity in the

_____

[3] The parties' depositions were made part of the equitable distribution hearing's record. N.T. at 9, 103.

house if he does not outlive Wife. Husband also asserts that, because there may be superior claims to Wife's estate, it is possible he may receive nothing, even if he does outlive Wife. Husband's Brief at 8-9.

The master and the trial court relied upon the determination that it would be unfair to require Wife to sell the marital residence as justification for the delay in providing Husband with his share of the marital estate. Because Wife had invested the majority of the funds in the residence, the master and trial court believed that it would be equitable for her to remain in the house until her death or until she chose to sell it. T.C.O. at 14-15. The trial court also cited the note that Wife would execute in favor of Husband as evidence of the equity of the award. *Id.* at 15.

One of the overarching purposes of the Divorce Code is to work economic justice between the parties. 23 Pa.C.S.A. § 3102 (a)(6). While the master and the trial court asserted that economic justice is achieved by Wife remaining in the marital residence, neither discussed how economic justice would be served through the indefinite delay of payment of Husband's share of the marital estate. By giving Wife the option of executing a note, the court permitted Wife to dictate when, if ever, Husband receives his share of the estate. Wife could choose that option and decide not to sell the marital residence with the knowledge that Husband has a heart condition that is deteriorating. *See* N.T. at 12-13 (describing Husband's heart condition).

We often have dealt with the issue of delayed receipt of equitable distribution in the context of pension benefits. We have compared immediate receipt versus delayed distribution:

The immediate offset method has the advantage of avoiding further entanglement between the parties. Problems with continuing court supervision and enforcement are also avoided. This method's greatest virtue, however, is that it effectuates a final and immediate settlement of the distribution of the retirement benefits. In contrast, the deferred distribution method equally divides the risk of forfeiture before maturity among the parties, but also prolongs the strife and hostility between the parties by extending the time for a final resolution of the parties' assets. Although an immediate offset is preferred, . . . this method is impractical where the parties do not possess enough assets to offset the pension award. When the value of the employee-spouse's pension far exceeds the value of the other marital property, the deferred distribution method must be used.

* * *

[T]he trial courts . . . must balance the advantages and disadvantages of each alternative method as applied to the facts of each particular case to determine which method best effectuates a fair and equitable distribution

*Hunsinger*, 554 A.2d at 93 (quoting *Braderman v. Braderman*, 488 A.2d 613, 619-20 (Pa. Super. 1985)).

The advantages of the immediate distribution of Husband's share are obvious. Husband and Wife would avoid further entanglement and the court would avoid continued involvement and enforcement. While a payment plan might be necessary, enforcement of such a method would be more clear-cut than the untangling of possible competing claims for Wife's estate. Here, the trial court's decision has all the disadvantages of deferred distribution

- 11 -

with none of its advantages. This arrangement would prolong the financial involvement between Husband and Wife and allow neither to separate completely from the other. Nor does this deferral divide any risk. All it does is allow Wife complete control over when, or if, Husband receives his share.

One benefit of deferred distribution is that it provides an option when the estate does not have sufficient liquid assets. However, while no one disputes that Wife does not have the total amount at her disposal, the record does not support a finding that Wife does not have the resources to pay Husband at all. Wife testified that she could take another $15,000 from her home equity line of credit. N.T. at 67. Godfrey paid Wife $400 per month, but stopped doing so. *Id.* at 71. Further, Wife's son was living with Wife at the time of the hearing and was not contributing to the household expenses. *Id.* at 84. Wife works part-time and receives social security benefits. *Id.* at 83. Wife could use her line of credit or ask her mother or son to contribute to enable her to pay the majority of what she owes Husband. Wife could seek to increase her work hours. The record does not support the conclusion that Wife has no option but to delay distribution to Husband until her death.

Additionally, Wife's current financial situation is largely of her own making. Wife complains that Husband has $6,000 in savings, while Wife has been left with no retirement fund and a line of credit debt. However, Husband's savings come from the proceeds of the sale of the parties' cabin. N.T. at 31. While Husband saved these proceeds, Wife used her share to

buy a camper for her children.  *Id.* at 67.  At the time of her deposition in 2012, Wife's line of credit/home equity loan was $14,575.  Deposition of Wife, Exh. 3 at 2.  At trial, approximately a year later, it was about $45,000. N.T. at 55.  Wife testified that part of the increase was due to counsel fees; however, approximately $20,000 of that debt was used to purchase a car for her son.  *Id.* at 60-61.  Wife's post-separation financial decisions should not be used to justify delaying or denying Husband his share of the marital estate.

Because there was no justification to delay, and perhaps deny, Husband's receipt of his share of the marital estate, the trial court abused its discretion in allowing Wife to do so.  However, the trial court did not abuse its discretion in allowing Wife the option of a payment plan over a period of time or of a lump sum payment to Husband.  Those options provide Husband with his share within a reasonable period, while recognizing Wife's current financial situation.  Therefore, we vacate the part of the order that allows Wife to execute a note in lieu of actual payment to Husband.

We note that the trial court recognized that the master made a calculation error and that, applying the coverture fraction correctly, Husband should have received $17,398.55.  T.C.O. at 6-7, n.1 & 2.  However, the trial court did not correct the order to reflect this error when Husband filed exceptions.  Because we are remanding this case, the trial court also is directed to enter an order reflecting the true amount and directing Wife  to pay Husband either in a lump sum or according to the payment plan.

In his final issue, Husband asserts that the trial court erred in denying his Motion for Sanctions. Husband pursued sanctions pursuant to Pa.R.C.P. 1023.1(d). That rule provides that the trial court has discretion in granting or denying such a motion. *Id.*, Note. Therefore, we review the court's decision for an abuse of that discretion.

Rule 1023.1 provides that, by signing a pleading, motion, or other paper, the party or attorney is certifying that it is not being filed for an improper purpose; that the claims are warranted by existing law, an extension of existing law, or establishment of new law; that there is evidence or evidence is likely to be found through discovery for any factual allegations; and that denials are based upon evidence or a reasonable lack of information or belief. Pa.R.C.P. 1023.1(c). The rule also provides that the court may impose sanctions when the rule is violated. Pa.R.C.P. 1023.1(d).

Husband argues that Godfrey included allegations in her petition to intervene that were contradicted by her deposition testimony. Husband contends that his counsel sent a letter to Godfrey's counsel pointing out the inconsistencies and requesting that the petition be withdrawn or corrected. Neither occurred. Husband alleges that Wife, who also verified Godfrey's petition, acted willfully in making false allegations. Husband also contends that the petition increased his counsel fees because he had to defend the petition, depose Godfrey, and seek sanctions. Husband's Brief at 10-14.

The trial court determined that it was reasonable for Godfrey to believe that she could be required to leave the marital residence when Husband asserted a claim to it. T.C.O. at 20. The trial court also found that, based upon Godfrey's testimony, the allegations in the petition were "not precisely accurate." *Id.* at 21. However, the court also determined that the allegations were not unreasonable given the information Godfrey had. The court concluded that the alleged conduct was "insubstantial and did not affect the proceedings in any manner." Thus, the court found that sanctions were not warranted. *Id.* at 22. Based upon our review of the record, we cannot conclude that the trial court abused its discretion in reaching its conclusions. Therefore, we affirm the denial of sanctions.

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2014