J-S92013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SHERRI ADELKOFF, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN ADELKOFF, | |
| Appellant | No. 711 WDA 2016 |

Appeal from the Decree April 25, 2016
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 13-008242-016

BEFORE:  SHOGAN, MOULTON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:               **FILED APRIL 21, 2017**

Appellant, Steven Adelkoff ("Husband"), purports to appeal from the trial court's equitable distribution order dated January 12, 2016, as modified by the trial court's order of February 10, 2016, granting in part and denying in part Husband's motion for reconsideration.  The orders were made final by the entry of the divorce decree between Husband and Sherri Adelkoff ("Wife") on April 25, 2016.[1]  After careful review, we affirm in part, vacate in part, and remand for additional proceedings.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The caption incorrectly noted the appeal was from the February 10, 2016 order granting in part and denying in part Husband's motion for reconsideration. However, a pre-divorce decree distributing marital property is interlocutory and cannot be reviewed until it has been rendered final by the entry of a decree in divorce. **Wilson v. Wilson**, 828 A.2d 376, 378 (Pa. Super. 2003) (citation omitted).  We have amended the caption to reflect that the appeal properly lies from the entry of the divorce decree.

The trial court summarized the factual background and procedural history as follows:

> [Husband] and [Wife] were married on March 6, 1994. The parties signed a prenuptial agreement before their date of marriage. The agreement specified that the parties' separately-owned property acquired before the marriage would remain their separate property. No children were born of the marriage. The parties separated on September 12, 2013. Their marriage lasted approximately nineteen (19) years.
>
> The procedural history of this case is extensive. The [c]ourt will discuss only the relevant case history here. Wife initiated this action by filing a Complaint in Divorce on November 6, 2013. Wife's Complaint raised claims for divorce, alimony *pendente lite*/spousal support, alimony, equitable distribution and counsel fees, costs and expenses. On November 12, 2013 Wife filed a Petition for a Temporary Protection from Abuse Order ("TPFA") against Husband, which was granted. The pending PFA Petition was disposed of on December 3, 2013 when the parties reached a Consent Order of Court. The Order granted Wife exclusive possession of the marital residence. Husband agreed to pay Wife $3,000.00 per month in alimony *pendente lite*.
>
> On March 10, 2015 Wife presented a Petition for Injunctive Relief wherein she alleged that the company partly-owned by Husband, International Electric Power, LLC ("IEP"), had a successful business venture in the Cayman Islands. Wife alleged that Husband had received a substantial amount of money as a result of the Cayman Islands deal and requested that any such money be deposited into an escrow account pending equitable distribution. The [c]ourt denied Wife's request.
>
> A three (3) day equitable distribution hearing was scheduled for September 24 & 25, 2015 and October 1, 2015. Additional testimony was required to develop a complete record. The hearing continued on October 6, 14 & 30, 2015. The [c]ourt issued a Findings of Fact and Order of Court on January 12, 2016 disposing of the parties' pending economic claims. The [c]ourt found that Husband's ownership interest in IEP was marital property and that its value could not be determined. The [c]ourt also found that the parties' mar[it]al assets that could be valued

were worth a total of $1,365,884.09. The [c]ourt awarded each party 50% of the marital estate. Husband was ordered to hold his IEP membership units as a fiduciary in a constructive trust on behalf of both parties. Husband was ordered to pay Wife a sum equal to 50% of all distributions, dividends, proceeds and excess return of capital received as a result of ownership of the Membership Units.

The [c]ourt found that Husband had an earning capacity of $300,000.00 per year. The [c]ourt found that Wife had an earning capacity of $81,000.00 per year. Husband was ordered to pay Wife alimony *pendente lite* in the amount of $4,240.00 per month retroactive to November 19, 2013. Husband was ordered to pay Wife $3,000.00 per month in alimony for a period of five (5) years following the issuance of a divorce decree.

On February 5, 2016 Husband presented a Motion for Reconsideration of the [c]ourt's January 12, 2016 Order. Husband requested that the [c]ourt reconsider its findings that Husband's ownership interest in IEP was marital and that the IEP interest could not be valued. Husband requested that the [c]ourt modify several sections of its order including: (1) requiring Husband to hold the IEP membership units in constructive trust for both parties; (2) awarding Wife a sum equal to 50% of all distributions, dividends, proceeds and excess return of capital that Husband has received or will receive as a result of ownership of the IEP units; (3) requiring Husband to pay all capital calls, liabilities and taxes associated with the IEP membership units and be subsequently reimbursed; (4) awarding Wife alimony *pendente lite* and alimony; and (5) awarding Wife counsel fees. The [c]ourt issued an order on February 10, 2016 granting Husband's Motion in part. The [c]ourt ordered that Husband: (1) be reimbursed for any and all capital calls, liabilities and taxes associated with the IEP membership units prior to any distribution paid to Wife; (2) withhold a reasonable amount owed to Wife for ongoing obligations, contractual liabilities and relevant taxes; (3) pay Wife alimony *pendente lite* until his appeal is resolved; and (4) immediately implement all aspects of the [c]ourt's January 12, 2016 Order not addressed in Husband's Motion for Reconsideration. Husband timely filed his Notice of Appeal of the [c]ourt's January 12, 2016 Order of Court as modified by its February 10, 2016 Order.

Trial Court Opinion, 7/7/16, at 1–3 (footnote omitted).

Husband presents the following questions for appellate review:

1. Whether the trial court erred as a matter of law in its treatment of Husband's interest in International Electric Power, LLC ("IEP"):

a. by finding that his interest was marital property in violation of the language and intent of the prenuptial agreement and in violation of the precedent regarding short-term transfers into and out of marital accounts;

b. assuming *arguendo* that his interest was marital, by failing to assign any value to his interest when that interest should have been valued as of the date of separation;

c. assuming *arguendo* that his interest was marital, by imposing a constructive trust on his interest in IEP for an unlimited duration of time; and

d. by failing to interpret the Operating Agreement of IEP as causing Wife to hold a Class B interest in IEP when the Court awarded 50% of Husband's interest in IEP to Wife pursuant to a constructive trust.

2. Whether (a) the trial court erred as a matter of law when awarding Wife alimony and alimony *pendente lite* based on earnings from Husband's interest in IEP while also awarding Wife 50% of Husband's entire interest in IEP and (b) reinstating Wife's alimony *pendente lite* award during the appeal without requiring a showing of need and failing to consider the substantial marital estate Wife has already received.

Husband's Brief at 3.

Our standard of review of awards of equitable distribution is well

settled:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable

distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

**Reber v. Reiss**, 42 A.3d 1131, 1134 (Pa. Super. 2012) (quoting **Biese v. Biese**, 979 A.2d 892, 895 (Pa. Super. 2009)).

Husband first challenges the trial court's designation of Husband's ownership interest in International Electric Power, LLC ("IEP") as marital property. More specifically, Husband contends that he used funds from his trust account to purchase the IEP stock, and, therefore, the stock is his separate property not subject to equitable distribution under the terms of the prenuptial agreement. The trial court disagreed, as follows:

Husband acquired a 15% ownership in IEP consisting of 200,000 units of Class A stock in exchange for $15,000.00 paid via check #168 dated October 15, 2010 and cashed on October 26, 2010. Check #168 was written from the parties' jointly-titled account #9655. Husband transferred $30,000.00 from his separate trust account into account #9655 on October 13, 2010.[2] Husband used $15,000.00 from that account to purchase the IEP stock. Ex. 9. No writings were generated regarding the separate or marital character of the $15,000.00

_____

[2] The actual date of the transfer is October 15, 2010. N.T., 10/6/15, at 685; Exhibit 9—Tracing and Analysis of Transfers from [Husband] to the Joint Marital Account (Schedule 1).

- 5 -

used to purchase the stock. Because the IEP stock was acquired during the marriage, it is presumed to be marital property. Husband bears the burden of overcoming this presumption by showing that the IEP stock was acquired in exchange for his separate property. 23 Pa.C.S.A. §3501(b).

The [c]ourt found that Husband's lack of effort to segregate the $15,000.00 evidenced his intent to gift it to the marriage. Husband argued in his Motion for Reconsideration that he did not take steps to segregate the $15,000.00 used to purchase the stock because he relied on the language in the prenuptial agreement to maintain the separate character of the $15,000.00 after its deposit into a marital account without the need for a writing. Husband's trust account is indisputably his separate property under the prenuptial agreement. The prenuptial agreement states that "at no time during or after the marital relationship shall [one party have an interest in the other's] Separate Property [and at no time during or after the marital relationship shall there be any commingling of any of their Separate Property] interest into jointly owned property or into marital property except as the parties shall specifically agree as evidenced by a written agreement." Prenuptial Agreement at 2. Husband argues that because the prenuptial agreement protected the $15,000.00 from becoming marital property due to commingling, it retained its separate character after being deposited into the joint account.

The [c]ourt noted in its Findings of Fact that Pennsylvania has rejected the "transmutation" theory, which transforms ownership of separate property into marital property if there is any commingling of the two. *Winters v. Winters*, 512 A.2d 1211, 1215 (Pa. Super. 1986). The [c]ourt did not, therefore, find that the $15,000.00 was marital property due to commingling or transmutation. The [c]ourt's finding, therefore, is not contrary to the prenuptial agreement's protection against commingling.

The parties' prenuptial agreement states that "[m]arital property, as used herein, shall mean: [...] (v) any gifts from any source made to or titled in the name of both parties." Under Pennsylvania case law a spouse gifts his separate property to the marriage when he has donative intent, the property is delivered and the property is accepted. *Lowry v. Lowry*, 544 A.2d 972, 977 (Pa. Super. 1988). On October 1[5], 2010[,] $30,000.00 was delivered and accepted into the parties' jointly-titled account

#9655. Ex. 9. The question, therefore, is whether [H]usband intended all $30,000.00 of his separate property deposited into the joint account to be a gift to the marriage. Donative intent is the "intention to make an immediate gift." *Wagner v. Wagner*, 466 Pa. 532, 537 (1976), quoting *In re Parkhurst Estate*, 402 Pa. 527, 531 (1961).

Husband's intention to make an immediate gift of the $30,000.00 transfer from his trust to the jointly-titled account is evidenced by the immediate use of the money for marital purposes and Husband's history of making such gifts to the marriage. Wife testified that the money deposited from Husband's trust account into joint account #9655 was routinely used for marital expenses including vacations, home improvement, jointly-filed taxes, pool service and window cleaning for the marital residence, Wife's medical costs and Husband's life insurance. Tr. at 176-79. Ex. 9. Wife credibly testified that Husband deposited money from his trust into joint account #9655 multiple times during the marriage to overcome a shortfall and pay marital expenses. *Id*. Husband intended for such transfers to be used for marital expenses as stated in an email from Husband to Wife dated August 23, 2013. Tr. at 182-83; Ex. 6F. Husband testified that the parties were able to sustain their lifestyle after a decrease in his income that started in 2009 because he supplemented their cash flow with money from his trust. Tr. at 869-70. . . .

Husband transferred $30,000.00 from his trust account to the joint account #9655 on October 15, 2010. Husband argues that $15,000.00 from the October 15, 2010 [transfer] remained his separate property from the date of the transfer into the marital account until IEP cashed check #168 on October 26, 2010. Immediately following the transfer of $30,000.00 from Husband's trust account on October 15, 2010 the following expenses were paid from account #9655: cash withdrawals, payments to animal hospitals, gas stations, grocery stores, restaurants, hair salons, pharmacies, a pet store, a parking garage and a wine store and a mortgage payment. Ex. 9. Husband did not argue against classifying these as marital expenses. . . .

Husband testified that he used joint account #9655 as a conduit to move $15,000.00 of his separate property from his trust account to IEP. Tr. at 995. He testified that he did not

have a checkbook for his trust account, did not ask his father for his trust account's checkbook, did not know how to obtain a "starter check," and did not know how to wire the money directly from the trust account to IEP. Tr. at 999-1002. At the time of trial, Husband was employed as General Counsel and Chief Financial Officer of IEP. His duties included structuring international and domestic project financing and negotiating equity and debt financing. Tr. at 1009. Husband worked as an equity partner for K&L Gates, an international law firm, where he developed expertise in black box transactions, off-balance sheet financing and Shariah-compliant investment platforms. Tr. at 1011-1012. Husband received an M.B.A. from Cornell. He has been working with financial transactions at a high level for over twenty (20) years. The [c]ourt did not find his testimony that he did not know how to write a check or transfer money directly from his trust account to IEP credible. The [c]ourt has no doubt that Husband would have segregated the $15,000.00 used to buy his interest in IEP if he so desired. His lack of action to segregate the funds is evidence that he intended to gift the entire $30,000.00 transfer to the marriage.

The [c]ourt did not find Husband's testimony regarding his lack of intention to gift the $30,000.00 to the marriage credible. The exhibits and credible testimony show a history of Husband gifting money from his trust account to the marriage. The [c]ourt's conclusion that Husband gifted the $30,000.00 transfer to the marriage is fully supported by the record and must stand.

Trial Court Opinion, 7/7/16, at 5–9.

After careful review, we conclude that the trial court's disposition of this issue is supported by the record and the relevant law. As described above, the trial court first found that Husband's failure to segregate the $15,000.00 from other funds in Account # 9655 "evidenced his intent to gift it to the marriage." Trial Court Opinion, 7/7/16, at 5. Second, the trial court relied upon *Lowry v. Lowry*, 544 A.2d 972, 977 (Pa. Super. 1988), for the proposition that Pennsylvania law provides that "a spouse gifts his

separate property to the marital estate when he has donative intent, the property is delivered and the property is accepted." Trial Court Opinion, 7/7/16, at 6. Thus, the trial court examined the October 15, 2010 transfer of funds to Account # 9655 and concluded that Husband's donative intent to gift the marriage was established by Husband's "immediate use of the money for marital purposes and Husband's history of making such gifts to the marriage." *Id.* at 7. Third, the trial court credited Wife's testimony concerning the numerous times between May 2010 and March 2013 that Husband transferred money from his trust account to Account # 9655 to pay for marital expenses and noted that Husband did not argue against classifying certain enumerated expenses as marital. *Id.* at 7–8. In contrast, the trial court rejected Husband's testimony that "he used joint account #9655 as a conduit to move $15,000.00 of his separate property from his trust account to IEP." *Id.* at 8. Given that Husband had an MBA from Cornell, had been an equity partner at K & L Gates, was General Counsel and Chief Financial Officer at IEP, and had over twenty years of experience dealing with complex financial transactions, the trial court found that Husband's testimony that he intended the $15,000.00 utilized to purchase the IEP stock to remain separate property lacked credibility. This Court will not reverse credibility determinations as long as they are supported by the evidence. *Morgante v. Morgante*, 119 A.3d 382, 395 (Pa. Super. 2015). The trial court's reasons for rejecting Husband's

testimony are supported by the record, and we decline to revisit the trial court's credibility determinations. Accordingly, Husband's first argument lacks merit.

Husband next contends that, even if the trial court correctly included the IEP stock in the marital estate, the trial court erred by failing to assign a value to the stock and imposing a constructive trust of unlimited duration. After careful review, we are compelled to agree.

At trial, Husband and Wife each presented an expert witness to render an opinion regarding the value of the IEP stock. Wife's expert, Richard Brabender, testified that the IEP stock could not be valued based upon the information available at the time of trial. Husband's expert, Joshua Lefcowitz, utilized the asset accumulation method to value the stock as of both the date of separation and the date of trial. Mr. Lefcowitz determined that the IEP stock was worth $58,503.00 on the date of separation, and $426,040.00 as of the date of trial.

In the findings of fact issued after the trial on the parties' economic claims, the trial court summarily resolved the issue of the disputed value of the IEP stock by "accept[ing] the testimony of Wife's expert, Richard Brabender, that the value of Husband's IEP stock cannot be accurately appraised at this time." Findings of Fact and Order of Court, 1/12/16, at 12. Husband challenged this finding in his motion for reconsideration, averring that the trial court was required to offer an explanation for rejecting his

expert's opinion. Husband thus requested the trial court to "adopt his expert's valuation of IEP or provide a detailed explanation as to why it did not accept the valuation." Motion for Reconsideration, 2/5/16, at 6. He further argues on appeal that the trial court should have accept his expert's valuation as of the date of separation.

In its 1925(a) opinion, the trial court offered the following rationale for crediting Wife's expert, Mr. Brabender:

> In determining the value of marital assets, a court must choose a date of valuation which best promotes economic justice between the parties. *Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) (quotation marks and citations omitted). The Superior Court has noted that the general rule is to value marital assets as of the date of distribution. *Id.* [a]t 19. There are limited circumstances when it is proper to deviate from the general rule, such as when one party causes the asset to depreciate or be disposed of or when valuation as of the date of distribution is significantly more difficult than valuation as of a different date. *Id.* Husband did not argue in favor of or present evidence to support deviating from the general rule. The [c]ourt, therefore, properly endeavored to value IEP as of the date of distribution.

> * * *

> Mr. Lefcowitz testified about his two (2) valuations for IEP: one (1) valuation as of the parties' date of separation and one (1) valuation as of the date of trial. For his date-of-trial valuation Mr. Lefcowitz [utilized] an asset accumulation method, which is commonly used to value holding companies. Although IEP was not a holding company, Mr. Lefcowitz analogized its operations to that of a holding company to explain his use of the asset accumulation method. He chose to use the asset accumulation method because despite its stated purpose to build and operate power plants, none of IEP's completed deals have resulted in the building or operation of power plants. Neither IEP nor its subsidiaries had any projects in the pipeline. Mr. Lefcowitz opined that Husband's shares of IEP were worth

- 11 -

$58,503.00 as of the parties' date of separation and $246,040.00[3] as of the date of trial. He did not include an analysis of what drove the increase in value in his report or testimony. Mr. Lefcowitz testified that IEP was "significantly reliant on the attributes of the principals of the business." He did not add any value contributed to the company by the "unique qualifications" of the principals.

Mr. Brabender credibly opined that Mr. Lefcowitz's date-of-trial valuation was inaccurate because it improperly assumed zero dollars in future cash flow for IEP. Mr. Brabender explained that omitting a value for future cash flow resulted in a liquidation value for IEP as opposed to a going concern value, which was improper because all indications were that IEP would continue to seek out business. Both experts agreed that the expertise, contacts and personal knowledge of IEP's members were what generated its revenue. Mr. Lefcowitz, however, did not include any monetary value for the members' nonmonetary contributions to IEP. Mr. Brabender credibly opined that this omission rendered Mr. Lefcowitz's valuation inaccurate.

Mr. Brabender reached the conclusion that Husband's interest in IEP cannot be valued. The court found Mr. Brabender's opinion well-reasoned and credible. Mr. Brabender testified that the income approach was the most appropriate for IEP but that the lack of information regarding IEP's future deals made it impossible for him to assign an accurate value. Mr. Brabender opined that the market approach, another valuation method, would not yield an accurate valuation for IEP because there were not enough comparable transactions from which to glean a reliable value.

The [c]ourt carefully considered the testimony and report of each party's expert. The [c]ourt found that Wife's expert, Mr. Brabender, credibly opined that Husband's shares of IEP could not be accurately valued with the available information. The [c]ourt was within its discretion to credit the testimony of one expert and discard the testimony of another. The [c]ourt's credibility determination must stand.

---

[3] It appears the trial court inadvertently transposed this figure. Mr. Lefcowitz testified that the value of the IEP stock as of the date of trial was $426,040.00. N.T., 10/6/15, at 1083.

Trial Court Opinion, 7/7/16, at 9–11 (record references omitted).

On appeal, Husband disputes the trial court's observation that Husband did not offer any evidence supporting a deviation from the general rule that marital assets should be valued as of the date of distribution. Husband claims that his position throughout the litigation was that the IEP stock should be valued as of the date of separation, owing to the fact that IEP's largest and more lucrative projects were completed after the parties' separation. Finally, Husband asserts that the trial court's rationale for rejecting Mr. Lefcowitz's expert opinion was not supported by the record. Specifically, Husband contends that the trial court's finding that a willing hypothetical buyer would pay some amount to purchase upcoming IEP projects was contradicted by Husband's testimony that IEP did not have any identified future projects and his expert's representation that no "prudent hypothetical investor . . . would ascribe any value to future projects that have not been identified." N.T., 10/6/15, at 1138.

As set forth above, a trial court has broad discretion when fashioning an award of equitable distribution. ***Childress v. Bogosian***, 12 A.3d 448, 455 (Pa. Super. 2011). "Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." ***Id.*** (citing ***Sternlicht v. Sternlicht***, 822 A.2d 732, 742 (Pa. Super. 2003)). In applying these principles, we cannot conclude that the trial court erred in

endeavoring to value the stock as of the date of distribution. Husband did not present sufficient evidence, which the trial court found credible, to support deviating from the general rule.

Furthermore, Husband's contention that the trial court erred in not accepting his expert's valuation opinion as of the date of distribution is premised upon an incomplete summation of the reasons the trial court doubted Mr. Lefcowitz's testimony. In addition to accepting Mr. Brabender's critique of Mr. Lefcowitz's date-of-trial valuation because it "improperly assumed zero dollars in future cash flow for IEP," the trial court noted that Mr. Lefcowitz's testimony and report "did not include an analysis of what drove the increase in value" of the IEP shares between the date-of–separation and the date-of-trial. Trial Court Opinion, 7/7/16, at 10. The trial court also faulted Mr. Lefcowitz for not considering "any value contributed to the company by the unique qualifications of the principals" in light of the expert's testimony that the value of IEP "was significantly reliant on the attributes of the principals of the business." *Id.* at 10–11 (internal quotations and record references omitted). However, for similar reasons, we are troubled by the trial court's blanket acceptance of Mr. Brabender's position that the IEP stock could not be valued.

First of all, Mr. Brabender opined that Mr. Lefcowitz's date-of-trial valuation was inaccurate because it assumed zero cash flow and that this resulted in a liquidation value, as opposed to a going concern value.

According to the trial court, Mr. Brabender further explained that this date-of-trial was improper because "all indications were that IEP would continue to seek out business." Trial Court Opinion, 7/7/16, at 9-11. Secondly, Mr. Brabender opined that Mr. Lefcowitz's failure to assign any monetary value to the members' nonmonetary contributions to IEP rendered Mr. Lefcowitz's valuation inaccurate. *Id.* On the other hand, however, Mr. Brabender concluded that "the lack of information regarding IEP's future deals made it impossible for him to assign an accurate value" based on the income approach, which he testified was the most appropriate method of valuing the IEP stock. *Id*.

We recognize the difficulty the trial court faced in assigning a value to this relatively new business as of the date of trial. However, as noted above, a trial court has broad discretion when fashioning an award of equitable distribution. *Childress*, 12 A.3d at 455. Furthermore, the Divorce Code does not specify a particular valuation method and the trial court is free to accept all, part or none of the evidence offered as the correct value. *Id.* at 456. It is clear that the trial court viewed this business as a going concern. We thus conclude that the trial court erred in not assigning a value as such.

Also, the trial court's acceptance of Mr. Brabender's expert opinion that IEP could not be valued led to the trial court's problematic disposition of Husband's future obligations regarding the IEP membership units, to wit:

i. Husband as a fiduciary shall hold the Membership Units in constructive trust on behalf of both parties. The voting rights shall be exercised by Husband as a fiduciary.

ii. Husband shall be responsible for paying all capital calls, liabilities and taxes associated with the Membership Units, for which he will be reimbursed as soon as practicable from the dividends, distributions and proceeds.

iii. Husband shall pay Wife a sum equal to 50% of all distributions, dividends, proceeds and excess return of capital received as a result of ownership of the Membership Units that Husband has received during the pendency of this proceeding.

iv. Husband shall pay Wife a sum equal to 50% of all future distributions, dividends, proceeds and excess return of capital received as a result of ownership of the Membership Units within ninety (90) days of receipt by Husband.

Findings of Fact and Order of Court, 1/12/16, at 22.

In his motion for reconsideration, Husband objected to several aspects of the trial court's distribution of the IEP shares to a constructive trust. Generally, Husband contended that the non-specified duration of the trust precluded a final resolution of the parties' economic issues and perpetuated an *ad infiniutm* entanglement between the parties—an outcome disfavored by the policy and intent of the Divorce Code. Husband also challenged the trial court's imposition of the constructive trust because: 1) the distribution of the IEP shares to the trust violated IEP's operating agreement; 2) it required Husband to serve as a fiduciary to someone other than his partners; 3) it risked IEP's business opportunities if there is a disagreement between Husband and Wife regarding the extent of Husband's fiduciary obligation to Wife; 4) it rendered Husband susceptible to perpetual discovery

and litigation with Wife and indentures Husband to Wife in perpetuity; and

5) it failed to account for any forfeiture event where Husband's IEP shares could convert to Class B, non-voting shares. Accordingly, Husband proposed that the trial court wholly award him the IEP shares as part of a revised equitable distribution order. Alternatively, Husband requested the trial court to reconsider the portion of its order dictating Husband's responsibility for all capital calls, liabilities, and taxes associated with the IEP shares, but providing that Husband shall be reimbursed for these costs from only future IEP proceeds. Husband additionally asserted that, in the event he is entitled to reimbursement of these costs, the amount must be paid to him prior to any distribution of Wife. Finally, Husband urged the trial court to afford him discretion to retain a reasonable portion of IEP distributions for ongoing financial liabilities of the company.

The trial court partially granted Husband's motion for reconsideration, as follows:

> a.  Husband's reimbursement for any and all capital calls, liabilities and taxes actually paid by Husband in prior and future deals associated with the Membership Units of [IEP] shall be paid to him prior to any distribution to [Wife];
>
> b.  Husband shall have the discretion to hold back a reasonable portion of prior or future distributions, dividends, proceeds and excess return of capital due Wife in accordance with the Order dated January 12, 2016 for ongoing obligations, contractual liabilities and all relevant taxes;
>
> c.  So long as Husband acts in good faith, Husband will have no liability to Wife related to decisions he makes concerning IEP. Husband is not required to suffer loss or subject

himself to liability or obligations as a result of being required to act as a fiduciary to Wife, so long as Husband acts in good faith;

      d. Husband may resign from IEP at any time he believes it is in his best interest. Husband may join or associate with any other business (as owner or employee) he believes in good faith is in his best interest. So long as Husband has acted in good faith, no portion of such future business, association or venture shall be considered in any way or manner marital property, and Wife shall have no interest whatsoever in any such future business, association or venture[.]

Order, 2/10/16, at 1–2.

On appeal, Husband argues that the trial court's modification did not go far enough in addressing his concerns. Husband focuses his challenge on the trial court's imposition of the constructive trust, arguing that the trial court erred when it "impos[ed] a constructive trust in his interest in IEP for an unlimited duration of time without any showing of fraud, duress, undue influence, mistake or other bad acts." Pa.R.A.P. 1925(b) Statement, 6/8/16, at 1–2. Husband also avers that legal error occurred when the trial court "fail[ed] to interpret the Operating Agreement of IEP as causing Wife to hold a Class B interest in IEP when the [c]ourt awarded 50% of Husband's interest in IEP to Wife pursuant to a constructive trust." *Id.* at 2.

To these allegations of error, the trial court responded:

      In his Concise Statement of Matters Complained of on Appeal Husband argues that the [c]ourt improperly imposed a constructive trust on the IEP interest "without any showing of fraud, duress, undue influence, mistake or other bad acts." Husband did not previously make this argument to the [c]ourt and it should be deemed waived pursuant to Pa.R.A.P. 302(a). The [c]ourt assumes that Husband plans to argue that the [c]ourt could have imposed a constructive trust only if the

parties' prenuptial agreement was invalidated due to fraud, duress, undue influence, mistake or other bad acts. Because the [c]ourt found that the prenuptial agreement's provisions did not apply . . . the [c]ourt was able to order that the IEP units be held in a constructive trust without first invalidating the prenuptial agreement. The argument cannot be sustained.

Husband complains that the [c]ourt erred by failing to interpret IEP's Operating Agreement as causing Wife to hold a Class B interest in IEP when the [c]ourt awarded 50% of Husband's interest in IEP to Wife pursuant to a constructive trust. Husband's complaint plainly mischaracterizes the [c]ourt's Order and should be denied.

The [c]ourt heard Husband's testimony about IEP's Operating Agreement and reviewed the document. IEP's Operating Agreement contains a provision that transforms Class A stock into Class B non-voting stock upon its voluntary or involuntary transfer. Husband testified that he believes the transfer provision would cause any stock transferred to Wife in-kind to be downgraded to Class B non-voting stock. The [c]ourt agreed with Husband's interpretation of the Operating Agreement on this point and did not order the IEP stock transferred in-kind to avoid that result. Husband also testified that he believed that if he were ordered to hold the stock in a constructive trust and pay Wife a portion of the proceeds received upon his sale of the IEP interest, the transfer provision of the Operating Agreement would be triggered and his stock would be downgraded to Class B non-voting stock.

The [c]ourt did not find Husband's self-serving testimony credible. The [c]ourt specified in its January 12, 2016 Order of Court that the IEP Membership Units would remain titled in Husband's name and that Husband would pay Wife a sum equal to all distributions and other income generated by his membership interest. The [c]ourt properly interpreted IEP's Operating Agreement to preserve the Class A status of Husband's Membership Units so long as Husband holds legal title. The [c]ourt's Order should be sustained.

Trial Court Opinion, 7/7/16, at 11–13 (record references and quotation marks omitted).

We first address the trial court's finding of waiver of Husband's challenge to the imposition of the constructive trust and disagree that the issue is waived for failure to present it to the trial court in the first instance. It appears that the first time the concept of a constructive trust arose in this litigation was after the trial court issued its January 12, 2016 Findings of Fact and Order of Court. Husband then timely filed his Motion for Reconsideration outlining his objections to the distribution of the IEP stock to the constructive trust, including that it frustrated the intent of the Divorce Code. Motion for Reconsideration, 1/30/16, at ¶ 6(a). Husband, therefore, did not waive review of this issue.[4]

Additionally, we find merit in Husband's position that the trial court's distribution of the IEP stock to a constructive trust constituted error. As noted, the trial court's imposition of the trust was occasioned by its acceptance of Wife's expert's opinion that the IEP stock could not be valued. This resulted in the trial court's unwieldly construct of a legal device that financially obligated Husband to Wife for an unrestricted duration as regards the IEP stock.

---

[4] The trial court presumed that Husband's contest to the imposition of the constructive trust was premised upon the validity of the parties' prenuptial agreement. *See* Trial Court Opinion, 7/7/16, at 12–13. However, Husband did not refer to this agreement in his request that the trial court reconsider its decision to impose the trust; rather, he claimed, *inter alia*, that the unlimited duration of the trust was contrary to the policy of the Divorce Code. The trial court did not address this argument.

"One of the overarching purposes of the Divorce Code is to work economic justice between the parties. 23 Pa.C.S. § 3102(a)(6)." **Dean v. Dean**, 98 A.3d 637, 642 (Pa. Super. 2014). The open-ended nature of the constructive trust, placing an onerous burden on Husband to remain accountable to Wife indefinitely, does not effectuate the desired equitable distribution of the marital assets. Moreover, the trial court's imposition of the trust for an unspecified period implicates concerns related to deferred distribution of marital assets. The Pennsylvania Supreme Court has decreed that "[t]here are sound reasons to avoid the [deferred distribution] approach due to its drawback of necessitating ongoing future proceedings and preventing finality and certainty in the litigation." **Fisher v. Fisher**, 769 A.2d 1165, 1169 (Pa. 2001); **see also Dean**, 98 A.3d at 643 (the advantages of immediate distribution are that "Husband and Wife would avoid further entanglement and the court would avoid continued involvement and enforcement."). Therefore, for the reason that the unlimited duration of the constructive trust thwarts the goal of effectuating economic justice between the parties, we conclude that the trial court abused its discretion in imposing the trust. As such, the matter must be remanded to refashion the equitable distribution order.

We are aware that our determination poses a quandary as to how the trial court should proceed on remand. As noted, the trial court concluded that the IEP stock could not be valued and thus, devised the constructive

trust remedy. However, the trial court assumed that IEP was a going concern when it imposed the constructive trust. Therefore, the matter is remanded for a hearing on the value of the IEP stock as of the date of distribution. Given the passage of time, information that was not available in September and October of 2015 should now be available to the parties. The trial court should direct that the valuation experts retained by the parties be provided with all the necessary documentation and available information to assess the value of IEP as a going concern on the date of distribution. [5]

Husband's second argument concerns the awards of alimony and alimony *pendente lite* ("APL") to Wife. In its January 12, 2016 equitable distribution order, the trial court decreed that "Husband shall pay Wife [APL] in the amount of $4,240 per month beginning on February 1, 2016 and continuing until a divorce decree has been filed." Order, 1/12/16, at 23. The trial court also decided that "Husband shall pay Wife $3,000 per month in alimony for a period of five (5) years following the issuance of a divorce decree." ***Id.***

In his motion for reconsideration, Husband requested the trial court to order that his "alimony obligation begin February 1, 2016 and extend for a

_____

[5] After the trial court renders its decision on the monetary worth of the stock, it would be preferable in this situation that the interest in IEP be distributed to Husband, with an offset to Wife. However, we recognize that it is the role of the trial court to fashion the specifics of the equitable distribution award. As such, we decline to address Husband's argument concerning the interpretation of the Operating Agreement of IEP.

period of 5 years therefrom irrespective of the entry of the divorce decree." Husband's Motion for Reconsideration, 2/5/16, at 10.[6] After oral argument, the trial court granted in part and denied in part Husband's motion. The court denied Husband's request regarding the starting date of his alimony obligation. Regarding APL, the trial court ruled that in the event that Husband files an appeal to this Court: "The parties shall process a PACSES order setting [APL] payable to Wife by Husband in the amount of $4,240 per month, effective February 1, 2016 and continuing until the exhaustion of appeals. . . ." Order, 2/10/16, at 2.

Husband's appellate challenge to the alimony and APL awards has two components: 1) Wife's alimony and APL amounts were impermissibly based upon Husband's interest in IEP, and 2) Wife failed to demonstrate a need for APL. The trial court determined that Husband waived his first allegation of error because he did not raise it in his motion for reconsideration. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). We agree and, thus, address Husband's final argument concerning the propriety of the trial court's alimony *pendente lite* award. The trial court explained its decision to award Wife APL during the pendency of the appeal, as follows:

---

[6] As the trial court noted, Husband presented his reconsideration motion on February 5, 2016, and the trial court granted the motion in part on February 10, 2016. Trial Court Opinion, 7/7/16, at 3. The docket indicates the motion was ultimately filed on June 1, 2016.

In his Motion for Reconsideration filed on February 10, 2016 Husband asked the [c]ourt to terminate APL and begin alimony payments to Wife as of February 1, 2016. The [c]ourt denied his request and ordered that Husband continue to pay APL in the amount of $4,240.00 per month and defer alimony payments until the resolution of his appeal. Husband claims that the [c]ourt did not require Wife to demonstrate a need for APL or consider the substantial portion of the marital estate that she already received. Before making its ruling the [c]ourt carefully considered Wife's financial situation in its nineteen (19) page Findings of Fact filed on January 12, 2016. The [c]ourt's analysis included consideration of each equitable distribution factor listed in 23 Pa.C.S.A. §3502(a) and a discussion of Wife's vocational skills, employability, income and earning capacity. The [c]ourt properly found that, based on Wife's financial situation and earning capacity, she was entitled to APL and alimony under the factors set forth in 23 Pa.C.S.A. §3701(b). The [c]ourt found Wife's evidence demonstrating her need for APL and alimony credible.

The [c]ourt carefully considered the equitable distribution factors listed in 23 Pa.C.S.A. §3502(a) before ordering the distribution of marital assets as set forth in its Order of January 12, 2016. Much of Wife's award consisted of retirement accounts which may not be easily accessible for the purposes of funding Wife's appeal defense. Wife had very limited separate financial resources. The [c]ourt was fully aware of the details of Wife's equitable distribution award and financial situation before ruling that Wife shall receive APL until Husband's appeal is resolved. Husband's claim that the [c]ourt did not require a showing of need before awarding Wife APL during the pendency of the appeal fails to consider the [c]ourt's diligence in fashioning the detailed equitable distribution Findings of Fact and Order of Court issued in this case.

Trial Court Opinion, 7/7/16, at 14.

This Court has set forth our standard of review and summarized the

law with regard to the continuation of APL during an appeal as follows:

Where an order regarding alimony *pendente lite* "is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court." ***Jayne v. Jayne***, [663

- 24 -

A.2d 169, 176 (Pa. Super. 1995)]. The obligation to pay alimony *pendente lite* "continues even after the entry of a final decree in equitable distribution when an appeal remains pending and terminates only after all litigation has ended." ***Id.*** The right to receive alimony *pendente lite* during an appeal is not absolute, however; "alimony *pendente lite* may be terminated before the litigation is concluded where the recipient has acquired assets of income which sufficiently equalized the financial ability of the parties to pursue the action." ***Id.***

***Brody v. Brody***, 758 A.2d 1274, 1281 (Pa. Super. 2000). Additionally,

[a]n appellate court's standard of review in cases involving support matters is whether the trial court abused its discretion. An abuse of discretion exists when the judgment of the trial court is manifestly unreasonable or is the result of prejudice, bias or ill-will. While it is not an appellate court's duty to create the record or assess credibility, we must nevertheless examine the existing record to ascertain whether sufficient facts are present to support the trial court's order. If sufficient evidence exists in the record to substantiate the trial court's action, and the trial court has properly applied accurate case law to the relevant facts, then we must affirm.

***Hibbitts v. Hibbitts***, 749 A.2d 975, 976-977 (Pa. Super. 2000) (internal citations omitted).

Husband contends that he should be discharged from his APL obligation because Wife "has received substantial marital assets and is receiving alimony." Husband's Brief at 10. Husband's argument is unavailing. First, it is not accurate that Wife is receiving alimony. The trial court's order on reconsideration specifically states that "alimony shall be deferred until the resolution of the appeal." Order, 2/10/16, at 2. Second, the fact that the equitable distribution order awarded Wife a significant dollar amount does not automatically mandate that her need for APL is

extinguished. As set forth above, the trial court comprehensively explained its rationale for continuing APL through the pendency of **Husband's** appeal, and we discern no abuse of discretion in the trial court's ruling.[7]

To conclude, we affirm the portion of the trial court's decree that designated the IEP shares as marital property and its award of alimony and APL to Wife. We vacate the equitable distribution order in that it distributed the IEP shares to a constructive trust of unlimited duration. The matter is remanded for a hearing on the value of the IEP as a going concern as of the date of distribution. The trial court is directed to then craft an amended equitable distribution award reflective of this economic adjustment.

Decree affirmed in part, vacated in part, and remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Moulton joins the Memorandum.

Judge Strassburger files a Dissenting Memorandum.

---

[7] In his reply brief, Husband requests that in the event the APL award is upheld he be credited for the thirty-day extension that Wife requested and received to complete her appellate brief. Issues presented before this Court for the first time in a reply brief are waived. *See* Pa.R.A.P. 2113 (scope of the reply brief is limited to matters raised by appellee and not previously addressed in appellant's brief). Additionally, Husband has not demonstrated that he made this request to the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2017